Story, Justice,
 

 delivered the opinion of the court. — This is a writ of error to the circuit court of the district of Columbia, sitting at Washington. The original action was brought by the
 
 [1]
 
 United States upon a bond executed by Lewis Deblois, and by Thomas Tingey and others, as his sureties, on the
 
 *82
 
 1st of May 1812, in the penal sum of $10,000, upon condition that if Deblois should regularly account, when thereto required, for all public moneys received by him, from time to time, and for all public property committed to his care, with such person or persons, officer or officers of the government i United' States, as should be duly authorized to ^settle and -* adjust his accounts, and should moreover pay over, as might be directed, any sum or sums that might be found due to the United States upon any such settlement or settlements, and should also faithfully discharge, in every respect, the trust reposed in him, then the obligation to be void, &c. In point of fact, Deblois was at the time a purser in the navy, though not so stated in the condition; and there is an indorsement upon the bond, which is averred in one of the counts of the declaration to have been contemporaneous with the execution of the bond, which recognises his character as purser, and limits his responsibility as such; and the bond was unquestionably taken, as the pleadings show, to secure his fidelity in office as purser.
 

 The declaration contains two counts : one in the common form for the penalty of the bond ; and a second, setting forth the bond, condition and indorsement, and averring the character of Deblois, as purser, his receipt of public moneys, and the refusal to account, &c., in the usual form. Several pleas were pleaded, upon some of which, issues in fact were joined. To the third, fourth, fifth, sixth and eighth pleas, the United States demurred, and judgment upon the demurrers was given for the defendant in the circuit court; and the object of the writ of error is to revise that judgment.
 

 There is no statute of the United States expressly defining the duties of pursers in the navy. What those duties are, except so far as they are incidentally disclosed in public laws, cannot be judicially known to this court. If they are regulated by the usages and customs of the navy, or by the official orders of the navy department, they properly constitute matters of averment, and should be spread upon the pleadings. It may be gathered, however, from some of the public acts regulating the departments, that a purser, or as the real name originally was, a burser, is a disbursing officer, and liable to account to the government as such. The act of the 3d of March 1809, ch. 95, § 3, provided, that, exclusively of the purveyor of public supplies, paymasters of the army, pursers of the navy, &c., no other permanent agents should be appointed, either for the purpose of making contracts, or for the purchase of supplies, or for the disbursement in any other manner of moneys for the use of the military establishment, or -*1271 *0^ navy of the United States ; but such as should be appointed J by the president of the United States, with the advice and consent of the senate. And the next section (§ 4) of the same act provided, that every such agent, and every purser of the navy, should give bond, with one or more sureties, in such sums as the president of the United States should direct, for the faithful discharge of the trust reposed in him; and that, whenever practicable, they should keep the public money in their hands in some incorporated bank, to be designated by the president, and should make monthly returns to the treasury, of the moneys received and expended during the preceding month, and of the unexpended balance in their hands. This act abundantly shows, that pursers are contemplated as disbursing officers and receivers of public money, liable to account to the government
 
 *83
 
 therefor. The act of the 30th of March 1812, ch. 47, made some alterations in the existing law, and required, that the pursers in the navy should be appointed by the president, by and with the advice and consent of the senate ; and that from and after the 1st day of May then next, no person should act in the character of purser, who should not have been so nominated and appointed, except pursers on distant service, &c. ; and that every purser, before entering upon the duties of his office, should give bond, with two or more sufficient sureties, in the penalty of $10,000, conditioned faithfully to perform all the duties of purser in the navy of the United States. This act, so far as respects pursers giving bond, and the import of the condition, being
 
 in pari materia,
 
 operates as a virtual repeal of the former act. The subsequent legislation of congress is unimportant; as it does not apply to the present case.
 

 It is obvious, that the condition of the present bond is not in the terms prescribed by the act of 1812, ch. 47, and it is not limited to the duties or disbursements of Deblois as purser, but creates a liability for all moneys received by him, and for all public property committed to his care, whether officially, as purser, or otherwise. Upon this posture of the case, a question has been made and elaborately argued at the bar, how far a bond, voluntarily given to the United States, and not prescribed by law, is a valid instrument, binding upon the parties in point of law ; in other *words, r%j 2s whether the United States have, in their political capacity, a right to *■ enter into a contract, or to take a bond, in cases not previously provided for by some law. Upon full consideration of this subject, wo are of opinion, that the United States have such a capacity to enter into contracts. It is, in our opinion, an incident to the general right of sovereignty; and the United States being a body politic, may, within the sphere of the constitutional powers confided to it, and through the instrumentality of the proper department to which those powers are confided, enter into contracts not prohibited by law, and appropriate to the just exercise of those powers. This principle has been already acted on by this court in the case of
 
 Dugan
 
 v.
 
 United States,
 
 3 Wheat. 172 ; and it is not perceived, that there lies any solid objection to it. To adopt a different principle, would be to deny the ordinary rights of sovereignty, not merely to the general government, but even to the state governments, within the proper sphere of their own powers, unless brought into operation by express legislation. A doctrine, to such an extent, is not known to this court as ever having been sanctioned by any judicial tribunal.
 

 We have stated the general principle only, without attempting to enumerate the limitations and exceptions which may arise from the distribution of powers in our government, or from the operation of other provisions in our constitution and laws. We confine ourselves, in the application of the principle, to the facts of the present case, leaving other cases to be disposed of as they may arise ; and we hold, that a voluntary bond, taken by authority of the proper officers of the treasury department, to whom the disbursement of public moneys is intrusted, to secure the fidelity in official duties of a receiver or an agent for disbursing of public moneys, is a binding-contract between him and his sureties, and the United States ; although such bond may not be prescribed or required by any positive law. The right to take such a bond is, in our view, an incident to the duties belong
 
 *84
 
 ing to such a department; and the United States having a political capacity to take it, we see no objection to its validity in a moral or legal view.
 

 Having disposed of this question, which lies at the very threshold of the
 
 %
 
 - cause, and meets us upon the face of the ^second count in the decla- •> ration, it remains to consider, whether any one of the pleas demurred to constitutes a good bar to the action. Without adverting to others, which are open to serious objections, on account of the looseness and generality of their texture, we are of opinion, that the fifth plea is a complete answer to the action. That plea, after setting forth at large the act of 1812 respecting pursers, proceeds to state, that before the execution of the bond, the navy department did cause the same to be prepared and transmitted to Deblois, and did require and demand of him that the same, with the condition, should be executed by him, with sufficient sureties, before he should be permitted to remain in the office of purser, or to receive the pay and emoluments attached to the office of purser ; that the condition of the bond is variant, and wholly different from the condition required by the said act of congress, and varies and enlarges the duties and responsibilities of Deblois and his sureties ; and “ that the same was, under color and pretence of the said act of congress, and under color of office, required and extorted from the said Deblois, and from the defendant, as one of his sureties, against the form, force and effect of the said statute, by the then secretary of the navy/’ The substance of this plea is, that the bond, with the above condition, variant from that prescribed by law, was, under color of office, extorted from Deblois and his sureties, contrary to the statute, by the then secretary of the navy, as the condition of his remaining in the office of purser, and receiving its emoluments. There is no pretence then to say, that it was a bond voluntarily given, or that, though different from the form prescribed by the statute, it was received and executed without objection. It was demanded of the party, upon the peril of losing his office ; it was extorted under color of office, against the requisitions of the statute. It was plainly, then, an illegal bond ; for no officer of the government has a right, by color of his office, to require from any subordinate officer, as a condition of holding office, that he should execute a bond with a condition different from that prescribed by law ; that would be, not to execute, but to supersede, the requisitions of law. It would be very different, where such a bond was, by qiYI “intake *or otherwise, voluntarily substituted by the parties for the ■i statute bond, without any coercion or extortion by color of office. The judgment of the circuit court is affirmed.
 

 This cause came on to be heard, on the transcript of the record from the circuit court of the United States for the district of Columbia, holden in and for the county of Washington, and was argued by counsel : On consideration whereof, it is considered ordered and adjudged by this court, that the judgment of the said circuit court in this cause be and the same is hereby affirmed.