The City of Boston *vs.* Frederic W. Capen & another.

A bond, given by the master or owner of a vessel arriving within this state with alien passengers on board, to the boarding officer duly appointed by the city of Boston under *St.* 1837, c. 238, § 1, in the penal sum of sixty five thousand dollars, reciting that sixty five of such alien passengers, named therein, have been landed and now reside in the city of Boston, who, in the opinion of the overseers of the poor of the city are likely to become chargeable to the commonwealth for their support, and conditioned to indemnify the city and commonwealth from all charge and expense which may arise from such passengers for the term of ten years, does not conform to *St.* 1837, c. 238, § 2; (1.) Because it is in the sum of as many thousand dollars as there are passengers, and not in the sum of one thousand dollars for each passenger; (2.) because it does not show that the boarding officer made the examination, required by the statute, to ascertain whether any of the passengers came within the description of persons for whom he had a right to exact a bond; and (3.) because it does not show that the passengers named were lunatic or indigent persons, incompetent, in the opinion of the boarding officer, to maintain themselves, or who had been paupers in any other country; and if it is not proved, in an action brought on such bond, that there were in fact passengers for whom he could legally exact a bond, the bond is void.

This was an action of debt on a bond in the penal sum of sixty five thousand dollars, executed by the defendant, Capen, as principal, and the other defendant, William M. Otis, as surety, to the plaintiffs, on the 16th of August, 1847, the condition of which was as follows:

"Whereas the said Otis, as master of the ship Georgia, and having her under his command, has lately, to wit, on the 15th day of August, arrived at the city of

Boston *v.* Capen. ·

Boston, from Liverpool, having with him as passengers on board of said ship, the following persons, who have no legal settlement in the commonwealth of Massachusetts, to wit:" (here the names of sixty-five persons are enumerated,) "which said passengers have been landed, and now reside in said Boston, and whereas, in the opinion of the overseers of the poor of said city of Boston, the said passengers are liable to become chargeable for their support to the said commonwealth, of which the said Otis has been duly notified by the mayor of said city: Now if the above bounden Capen shall well and truly indemnify and save harmless the said city, as also the said commonwealth, from all manner of charge and expense which may arise from said passengers, each and every of them, for and during the term of ten years, then this obligation to be null and void, otherwise to be and remain in full force and virtue."

At the trial, which was in this court, before *Fletcher*, J., it was in evidence, that the persons named in the condition of the bond, were landed from the ship Georgia, at Deer Island, in the harbor of Boston, being sick and destitute, and were there for sundry periods of time, and became a charge upon, and were supported by the plaintiffs. One of these persons was discharged as cured, and went up to the city for employment, but subsequently returned, being unable to find employment.

Jotham B. Monroe, the superintendent of alien passengers for the port of Boston, called as a witness for the plaintiffs, testified that on the arrival of the ship Georgia at the quarantine ground, near Deer Island, he went on board and introduced himself to the master, as the person appointed by the city authorities, under the act of 1837, *c.* 238, to examine passengers, and gave the master a copy of the act; that having mustered and examined · the passengers, he informed the master, that there was a certain number, for whom two dollars a head must be paid, and that for the residue, being paupers, a bond must be given. The master answered, that his owner, the defendant Capen, would meet all the necessary demands. The superintendent then stated to the master that, by the quarantine regulations, the ship could not go to town until the port physician had given a certificate that she was thoroughly cleansed, and suggested to him the privilege of having those of his passengers, who were not diseased, landed at the Island Point. Those who were sick were placed in the hospital, and the ship cleansed at once. The superintendent told

the master, that the expense of landing these passengers, and sending them up to the city, would be $100. The master chose to consult the owner, who subsequently agreed with the superintendent, that the latter should land all the passengers on the island, so that the vessel might be cleansed at once, and to pay the expense, as above, which he subsequently did. He also paid the head money on those passengers designated by the superintendent. No bond was required in those cases where head money was paid. The passengers were all landed before the bond was delivered to the witness. The witness further stated, that he had never refused to land passengers until a bond was given; that, in taking the bond in suit, he acted as the superintendent of alien passengers, under the law above referred to; that he alone acted for the city; that he filled up the bond and saw the master execute it; and that it was his impression, that the master took it to the owner, who executed it and brought it to him.

Upon these facts, it was agreed that the case should be submitted to the court, who were to enter such judgment, as the law should require, or direct the case to be tried by a jury, if they should think proper; and if the judgment should be for the plaintiffs, to appoint an assessor to ascertain the amount for which it should be rendered.

*P. W. Chandler*, city solicitor, for the plaintiffs. 1. The bond, being a sealed instrument, can be inquired into only for fraud or duress, and the obligors are estopped from showing any failure of consideration. *Sumner* v. *Williams*, 8 Mass. 162, 200; *Page* v. *Trufant*, 2 Mass. 159; *Dale* v. *Roosevelt*, 9 Cowen, 307; *Dorlan* v. *Sammis*, 2 Johns. 179, note; *Dorr* v. *Munsell*, 13 Johns. 430; *Stephens* v. *Crawford*, 1 Kelly, 574, 582. 2. The bond is valid and binding under *St.* 1837, *c.* 238, § 2. It is in accordance with the provisions of the statute. The examination was made by the proper officer; persons were found coming within the description of the statute; and the bond was voluntarily entered into by the obligor, having learned the existence and provisions of the statute. The consideration of the bond is the privilege of landing such passengers as the laws require to be bonded, on the one part,

and on the other the protection of the city against the support of foreign passengers. The statute is constitutional; *Norris* v. *Boston*, 7 Howard, 283, 410, 414, 457, 468, 469, 518; *License Cases*, 5 Howard, 504, 582, 589; and the privilege of landing passengers, granted by the superintendent, was there-fore a legal consideration. There was a substantial compli-ance with the requirements of the statute, though the bond, having been executed by the master before, was not delivered to the superintendent until after the passengers had been landed.

The giving of the bond was voluntary, because the passen-gers were landed before the bond was executed by the owner of the vessel. Even if the bond had been required before the passengers were landed, it would be a voluntary act, and in the nature of the payment of money, which a party cannot recover back, although unjustly demanded. It is well settled, that if a party, with full knowledge of the facts, voluntarily pay a demand urgently made on him, and threatened or attempted to be enforced by legal proceedings, he cannot consider the money as paid by compulsion, and recover the same back again, although he protested at the time against his responsi-bility; unless there be fraud and a knowledge of the injustice of the claim on the part of the person enforcing it.[*] *Colwell* v. *Peden*, 3 Watts, 327; *Elliott* v. *Swartwout*, 10 Peters, 137; Chit. Con. (5th Amer. ed.) 633.

A larger penalty, or the insertion of additional words, not mentioned or required by the statute, does not invalidate the bond. The penalty was properly fixed at $65,000. But if the penalty is too high, the bond is still good for $1,000. *Collins* v. *Gwynne*, 7 Bing. 423, 9 Bing. 544, 2 Moore & Scott, 640; *Norden* v. *Horsley*, 2 Wils. 69. 3. The bond is good at common law. *Baker* v. *Haley*, 5 Greenl. 240; *Winthrop* v. *Dockendorff*, 3 Greenl. 156; *Burroughs* v. *Lowder*, 8 Mass. 373; *Justices of Christian* v. *Smith*, 2 J. J. Marsh. 472; *Hoy* v. *Rogers*, 4 Monr. 225; *Cobb* v. *Curts*, 4 Littell, 235; *Hall* v. *Cushing*, 9 Pick. 404; *Sanders* v. *Rives*, 3 Stew. 109; *United*

---

[*] See *Benson* v. *Monroe*, *Post*, 125.

*States* v. *Brown*, Gilpin, 155, 179; *State Bank* v. *Twitty*, 2 Hawks, 1; *Vroom* v. *Smith*, 2 Green, N. J. 479; *Anderson* v. *Foster*, 2 Bailey, 500; *Branch* v. *Elliot*, 3 Dev. 86; *Justices of Cumberland* v. *Armstrong*, 3 Dev. 284, 286; *Governor* v. *Matlock*, 2 Hawks, 366; *Johnston* v. *Gwathney*, 2 Bibb, 186; *Stevens* v. *Treasurers*, 2 McCord, 107; *Treasurers* v. *Bates*, 2 Bailey, 362, 376; *State* v. *Mayson*, 2 N. & McC. 425; *Clarke* v. *Ray*, 1 Har. & J. 323; *Union Bank of Maryland* v. *Ridgely*, 1 Har. & Gill, 324; *Stephens* v. *Crawford*, 1 Kelly, 574.

*B. R. Curtis*, for the defendants. The bond in this case is void. 1. Because though demanded and received by the superintendent of alien passengers *colore officii*, it was not taken in the course of his legal duties, nor justified by any authority of his office. *Churchill* v. *Perkins*, 5 Mass. 541; Story on Agency, § 307; *U. States* v. *Morgan*, 3 Wash. C. C. 10. And the superintendent not being authorized to accept such a bond for and to the city, there was no legal delivery. 2. Because it was given in execution of and as the consideration for a compact to permit the passengers to land without complying with the law, which was expressly forbidden by the statute. 3. Because it varies from the requisitions of the statute, and imposes on the obligee greater burdens than the law allows. *Hall* v. *Cushing*, 9 Pick. 404; *Commonwealth* v. *Laub*, 1 Watts & S. 261; *U. States* v. *Gordon*, 1 Brock. 190. 4. Because, the master having agreed to give the bond in order to get the passengers landed, the execution of it afterwards, in pursuance of such agreement, was in point of law under duress and not voluntary. Besides; there is a distinction between an action to recover back money paid under a mistake of law, and an action to enforce a promise or obligation entered into under a similar mistake. *May* v. *Coffin*, 4 Mass. 341; *Warder* v. *Tucker*, 7 Mass. 449; *Freeman* v. *Boynton*, 7 Mass. 483.

The statute in question is not constitutional, within the decision of the supreme court of the United States in *Norris* v. *Boston*, 7 Howard, 283.

BIGELOW, J. The view which the court have taken of this case renders it unnecessary to consider several of the ques-

tions discussed in argument by the counsel. It is admitted that the bond, on which the plaintiffs claim to recover, was required of the defendants, and given by them, under the second section of the statute of 1837, *c.* 238, relating to alien passengers; by which it is provided that, " if, on examination, by the boarding officer, of any vessel, there shall be found among the passengers any lunatic, idiot, maimed, aged or infirm persons, incompetent, in the opinion of the officer so examining, to maintain themselves, or who have been paupers in any other country, no such alien passenger shall be permitted to land, until the owner, master, consignee or agent of such vessel shall have given to the city or town a bond in the sum of one thousand dollars, with good and sufficient surety, that no such lunatic or indigent passenger shall become a city, town or state charge, within ten years from the date of said bond."

The first question which presents itself under this section of the statute is, for what classes of passengers is the boarding officer authorized to require a bond. It seems to be quite clear, that they are comprehended under two descriptions. First, for all those who, on examination, in the opinion of the boarding officer, are incompetent to maintain themselves by reason of their being lunatics, idiots, maimed, aged or infirm. Secondly, for those who have been paupers in a foreign land; that is, for those who have been a public charge in another country; and not merely destitute persons, who, on their arrival here, have no visible means of support; the word " paupers" being used in this connection in its legal, technical sense. For these two descriptions of passengers, and for these only, can a bond be required. All others are included in the third section of the act, and are made liable to the payment of the capitation tax or head money therein provided. Under the second section, therefore, it is not sufficient that, in the opinion of the boarding officer, some of the passengers are poor and destitute, and so likely to become chargeable to the city, town or state; but he must be satisfied that they come within the two descriptions of persons above named, before he is authorized to require a bond from the master or agent of the vessel.

And there was an obvious reason for thus restricting the classes of passengers to which this provision was applicable. It is only those who, by reason of some permanent disability, are unable to maintain themselves, or who had actually been a public charge in another country, that might become a heavy and long continued charge to the city, town or state, in this country; and for these the statute requires a bond to be given, with a penalty sufficient in amount to guard against loss. But the tax of two dollars on each passenger was undoubtedly deemed by the legislature a sufficient provision to indemnify the public against any charges which might be incurred for the relief or support of those who were not permanently disabled, and who had never been paupers prior to their arrival here.

The next question material to be considered relates to the bond which the officer was authorized to require under the second section. It was urged at the argument, that the meaning of the statute was, that the bond, in all cases, was to be for one thousand dollars only, without regard to the number of passengers on board of a vessel for whom a bond could properly be required. But this does not seem to be a reasonable construction. The language of the statute is, " No such passenger" shall be permitted to land, unless a bond shall be given that " no such passenger" shall become a public charge; clearly indicating, that a bond was to be given for each passenger in the sum of one thousand dollars. Besides; it cannot be supposed that the statute was intended to operate so unequally. For the effect of the construction contended for would be, that the owner or consignee, having one passenger on board of a vessel coming within the terms of the second section of the act, would be required to give a bond in the same sum as one whose vessel had on board one hundred passengers of the same description. Such a construction, too, would in many cases defeat the main purpose for which the statute was intended; because it is manifest, that a bond in the sum of one thousand dollars would very often be a security wholly disproportionate to the liability of the city, town or state, to relieve and support any consi-

derable number of persons for so long a period as ten years.

The statute, therefore, authorizes the boarding officer to require a bond in the sum of one thousand dollars for each passenger coming within the description of persons named in said second section. He cannot take a bond in a less sum; he ought not to require one in a larger sum. Now, by reference to the bond on which the plaintiffs rely, it will be seen that it does not conform to the statute in several material particulars. In the first place, it is a bond in the sum of sixty five thousand dollars, by which the obligors are bound in that sum to " indemnify and save harmless the city and also the commonwealth from all manner of charge and expense which may arise from said passengers, each and every of them, for and during the term of ten years." The effect of this is to make the parties liable to pay any sum within the penalty, however large, for each passenger, instead of restricting the liability to one thousand dollars. In the second place, it does not appear by the recital in the bond, that the boarding officer made any examination of the passengers, as he is required to do by the statute, to ascertain whether any of them came within the description of persons for whom he had a right to exact a bond; but it is set out in the bond only, that, in the opinion of the overseers of the poor of the city of Boston, certain persons were liable to become chargeable for their support to the commonwealth ; a statement wholly immaterial and irrelevant. And, lastly, it does not appear by the bond, that there were any passengers on board of said vessel, who came within the provisions of said section, and for whom the boarding officer had a right to require bonds. The result is, therefore, that the bond does not conform to the statute, nor does it show that the boarding officer had any right to require a bond of the master or owner of the vessel.

On referring to the testimony of Monroe, the agent and examining officer, and the only witness who testified at the trial, it is not shown that, on examination, he actually found any passengers on board said vessel, for whom he could legally

require bonds. All he says on this point is, that, on examin-
ing the passengers, he informed the master of the vessel that
there was a certain number for which two dollars must be
paid, and that for the residue, being paupers, a bond must be
given. He does not say, that, on examination, he found any
lunatic, idiot, maimed, aged or infirm persons, incompetent,
in his opinion, to maintain themselves, nor that any of them
had been paupers in a foreign country. The statute, as has
been before said, did not authorize him to require a bond for
those who were then poor and destitute, without means of
support; but only for those who had been paupers in another
country. We cannot infer from his testimony, that any such
were on board the vessel. For aught, therefore, that appears
by the bond or the evidence in the case, the boarding officer
had no right to require the bond to be given. It was, then, a
bond exacted by a public officer, purporting to act in the dis-
charge of his duty, but having in fact no legal authority to
require it. It stands, in other words, as a bond given to
one who had no lawful authority to take it, and comes within
that class of cases in which it has been held that a bond, taken
by a public officer when he had no authority to require it, is
illegal and void. *United States* v. *Tingey*, 5 Peters, 115, 129;
*Purple* v. *Purple*, 5 Pick. 226; *Thompson* v. *Lockwood*, 15
Johns. 256.

It was suggested at the argument, that it appeared by the
evidence that the bond in this case was voluntarily given by the
defendants, and was not required of them under the provisions
of the statute; because the boarding officer, by an arrange-
ment with the master, permitted the passengers to land before
the bond was delivered to the plaintiffs. But we think this
is not a proper inference from the facts reported. The arrange-
ment for landing the passengers was made after the officer had
informed the master the bond must be given, and after he had
agreed to comply with the requisition. It cannot be pretended
that the passengers would have been permitted to land, if this
arrangement had not been made. We think that the landing
of the passengers and giving the bond are to be regarded as
parts of one and the same transaction; and that the mere

fact that the former took place before the latter, does not authorize the inference that the bond was given voluntarily, and was not exacted under legal compulsion.

There is no doubt of the soundness of the general principle of law contended for by the learned city solicitor, that a bond given in pursuance of a statute, though not strictly conformable to it, and containing conditions other and more onerous than those authorized by statute, may be good at common law, and to a certain extent binding on the parties; but it will be found that, in all the cases cited, in which this doctrine is recognized, the obligee was lawfully empowered to require a bond, and the obligor was lawfully bound to give one. But in the case at bar, the officer had no right to require a bond, and the obligors were not legally bound to give one.

Upon the question whether, if it had appeared by the evidence in the case that there were passengers on board the vessel coming within the terms of the second section of the act of 1837, *c.* 238, this bond would then have been valid and binding on the parties, the court do not deem it necessary to express an opinion; but it may be doubtful whether any evidence would be competent to contradict or control the recital in the bond, describing the class of passengers for which the bond was taken. See *Cutler* v. *Dickinson*, 8 Pick. 386.

*Plaintiff nonsuit.*