Scofield, J., delivered the opinion of the court:
delivered the opinion of the court:
The claimants bring suit to recover taxes alleged to have been assessed illegally and paid under compulsion, amounting to $10,234.08.
It appears that in June, 1867, one C. A. Sanborn had in the United States bonded warehouse of A. H. Mills, in the thirty-second district of New York, 500 barrels of whisky, which he desired to remove for reilistillation. Having given a bond, with sureties, conditioned for its return after redistillation, he was-allowed to remove it. It was developed soon afterwards that some of the sureties were insolvent, and he was required to give additional security. Instead of giving anewbondhe borrowed from the claimants 358 barrels of whisky and 50 barrels of alcohol and offered them as collateral to the bond. The offer *248 was accepted and the whisky and alcohol given into the possession of the proper officer of the government.
Thereafter Sanborn obtained permission from the deputy commissioner, J. E. Messmore, to return his whisky, when redis-tilled, into the Cunningham bonded warehouse, located in the eighth district, instead of the warehouse in the thirty-second district from which it was taken. In due time it was so returned.
Very soon thereafter the Cunningham warehouse, and Boehm’s rectifying-house, adjoining it, were destroyed by fire.
After the Sanborn whisky, converted into alcohol, had been returned to the Cunningham warehouse, the claimants demanded the surrender of the 358 barrels of whisky and 50 barrels of alcohol put up as collateral to the Sanborn bond.
Some question arose as to whether the Sanborn whisky had been returned to the Cunningham warehouse, in the eighth district, and, if so, whether that fact satisfied the bond conditioned for its return to the thirty-second district. The matter was referred to the Internal Beveuue Bureau, at Washington, by which the collector was finally instructed to require from the claimants a warehouse bond conditioned for the payment of the regular tax upon the whisky and alcohol, as if such tax had not already been paid, and upon failure to comply to dis-train and sell the same. Tb e claimants, orally protesting against the requirement, gave the bond and, still protesting, subsequently paid the tax, amounting to $10,234.08.
The claimants made application to the Commissioner of Internal Revenue for a refund of this tax, but the application was rejected. They then applied to Congress, and thence, by a resolution of the House, their claim was sent to this court.
The court has found that the Sanborn whisky, after conversion into alcohol, was deposited in the Cunningham warehouse, and also that claimants’ whisky and alcohol had paid the regular tax before it was put up as collateral security to the San-born bond.
Upon this state of facts the court holds that the claimants were entitled to demand a return of their property. The defendants could not justly receive and retain the Sanborn spirits in the Cunningham warehouse and still demand its return to the Mills warehouse. By receiving it in one place they waived their right to claim it in another.
*249 In this view of the ease, we are not required to pass upon the legality of the acts of the collector in accepting property as collateral security, nor of the deputy commissioner in consenting that the spirits might be deposited in a warehouse other than the one called for by the bond.
In the judgment of the court the defendants were not authorized by law to impose conditions upon the return of claimants’ whisky and alcohol inconsistent with or additional to the original pledge.
But it is said that even if the defendants could not legally exact the bond, the claimants, having given it, must abide by its terms. That might be so if the bond had been voluntarily given in settlement or compromise of a doubtful claim. In' this case, however, the bond was demanded without color of right, and given under protest and by compulsion. The claimants were told that they must execute the bond or suffer their property to be distrained and sold. The alternative was as unlawful as the demand. They had no right to distrain the property, because the Sanborn bond for which it had been pledged was fulfilled and canceled. They had' no right to assess taxes upon it, because it had already been assessed for all legal taxes, and the same had been paid.
A bond thus secured should not be enforced, and taxes thus collected should not be retained. (United States v. Tingey, 5 Pet., 115; Swift Company v. United States, 111 U. S. R., 22.)
The defendants present a counter-claim, based upon the following facts:
July 11, 1867, Isaac Boehm, one of the claimants, was-the owner of 373 barrels of alcohol which were deposited, under bond, in the Cunningham bonded warehouse, in New York. Desiring to remove the alcohol temporarily in order to change it into better barrels, he gave a bond, signed by all the claimants, conditioned for its return within five days. Under this bond the alcohol was removed from the warehouse, but never returned.
At the time of its removal there was a tax lawfully assessed against it amounting to $63,629.40. This tax has never been paid.
Upon these facts the court holds that the claimants became liable for the amount of the tax, and thatit constitutes aproper counter-claim in this case.
*250 In the pleadings the defendants presented as an additional counter-claim a judgment in their favor against Samuel C. Boehm and Nathan Boehm, two of the claimants, obtained in the United States district court, amounting to $13,186. In connection with this counter-claim it was shown that the defendants in the judgment were entitled to receive five-sixths of any sum that might be recovered in this suit. To this counter-claim the claimant entered a demurrer, which was sustained by the court in an opinion elsewhere reported.
Deducting the amount of the claim from the counter-claim allowed by the court leaves a balance in favor of the defendants amounting to $53,395.32, for which sum judgment will be entered in their favor.
Davis, J., took part in this and all the decisions subsequently reported unless otherwise noted.