MAYOR, ETC., OF THE CITY OF NEW YORK *v.* NATIONAL BROADWAY BANK.

(*Supreme Court, General Term, First Department.* May 5, 1890.)

1. MUNICIPAL CORPORATIONS—DEPOSIT OF CITY FUNDS—POWERS OF CHAMBERLAIN.
   Laws N. Y. 1866, c. 623, (an act to regulate the deposit by the chamberlain of New York city and county money,) provides that the banks in which the money is deposited shall proportionately pay the rent of the office of chamberlain and the salaries of his clerks and deputy, but says nothing as to the matter of interest. *Held,* that the chamberlain could stipulate for interest on deposits.

2. SAME—INTEREST.
   From the passage of the act until November, 1871, defendant bank regularly paid to the chamberlain 4 per cent. on deposits. It thereafter continued to pay its proportion of the expenses of the chamberlain's office, but paid no interest, for the reason that the city comptroller denied the chamberlain's authority to collect it, and directed the bank to add it as a credit to the deposits. Defendant's counsel advised it not to make the payments or credits, but to send monthly statements to the comptroller and chamberlain of the interest due. A communication of the comptroller to defendant was referred by the directors of the latter to its president, who had become the chamberlain, who, in a letter to the comptroller, said the interest was the result of a contract between the chamberlain and the bank. No action was taken by the stockholders or directors denying the existence of an agreement to pay interest or defendant's liability. *Held,* that there was an agreement to pay interest, and that, as it was not illegal, defendant could not, after having the benefit of the deposits, question the chamberlain's authority to make the agreement.

3. APPEAL—REVIEW—OBJECTIONS NOT RAISED BELOW.
   The evidence consisted of a stipulated statement of facts, and it was stipulated that plaintiff gave *prima facie* evidence of these facts, and that defendant objected to parts thereof as incompetent and irrelevant, and that in case of defendant's taking an appeal the record should be so framed as to preserve all its rights of objection and exception. No objections were brought to the court's attention on the trial. Moreover, proof of defendant's liability was not dependent on the objectionable evidence. *Held,* that the judgment would not be reversed by reason of the admission of this evidence.

Appeal from circuit court, New York county.

Action by the mayor, etc., of the city of New York, against the National Broadway Bank of the city of New York. From a judgment for plaintiff defendant appeals.

Argued before VAN BRUNT, P. J., and BRADY and DANIELS, JJ.

*Thomas Allison,* for appellant. *Simon Sterne* and *John H. Strahan,* for respondent.

DANIELS, J. The action was brought to recover interest upon deposits of money belonging to the city and county of New York made with the defendant. These deposits commenced about the first of the year 1861, and interest was paid by the defendant upon the deposits to the chamberlain of the city of New York up to and including the time of the enactment of chapter 623 of the Laws of 1866.[1] The payments of interest preceding that date do not appear to have been either precise or regular, but they were paid to the chamberlain from time to time, and probably amounted to the rate of 4 per cent. upon the deposits. But no accounts were produced showing the amounts which had been paid and received, and the transactions prior to the enactment of this law were not clearly or certainly proved. But from the enactment of the law of 1866 to the last of November, 1871, the interest upon the deposits was regularly paid by the defendant to the chamberlain; and this in-

---

[1] An act to regulate the deposit by the chamberlain of New York city and county money.

terest consisted of 4 per cent. upon the daily balances remaining on deposit to the credit of the city and county with the defendant. From the evidence in in the case, consisting mainly of a stipulated state of facts, the inference is plainly supported that there was no objection or dissent on the part of the defendant during that period to the payment of this interest, but it was regularly paid at the expiration of each month, as it had accrued on the amount of the deposits; and from the fact of these payments it may be inferred, as it was at the trial, that an agreement had been entered into on the part of the bank with the chamberlain for the payment of this rate of interest. In *Esterly* v. *Cole*, 3 N. Y. 502, it was said in the course of the opinion that "an agreement for interest may be inferred from the course of dealing between the parties, as where interest has before been charged and allowed under the like circumstances." These deposits were continued from the last of November, 1871, to the 17th of June, 1873, but no interest was paid upon them during this interval, except that which accrued for the month of May, 1873, and that appears to have been paid because of the directions contained in section 35 of chapter 335 of the Laws of 1873, that so much interest should be reserved on the deposits. A sufficient amount to defray the defendant's proportion of the expenses of the chamberlain's office was paid from time to time during the interval already mentioned; and this, as well as the payment of the interest for the month of May, 1873, was credited to the defendant in the disposition of the action, against the interest which it was found had accrued on these daily balances, and then leaving a final balance amounting to the sum of $186,684.18.

But the omission to pay the monthly amounts accruing on these balances for interest from the end of November, 1871, to the month of May, 1873, did not arise out of any denial on the part of the defendant that it had become bound to pay this interest on the daily balances of the deposits. There was no denial at that time, or in the subsequent dealings between the financial department of the city and the bank, of its having obligated itself by agreement to pay this interest. But the failure to pay the interest arose out of a disagreement between the comptroller of the city and the chamberlain, the former denying the right of the latter to collect the interest, and insisting that it could only be drawn on the warrant of himself and the mayor; and where that might be necessary, as it was as to the disposition of county moneys, that the warrant should also be signed by the clerk of the board of supervisors. And by a letter which the comptroller wrote to the bank on the 16th of December, 1871, the bank was forbidden to pay the interest accruing on the deposits otherwise than upon the authority of warrants signed in that manner; and it was requested, as the interest accrued at the end of each month, that it should be credited to the accounts of the city and county, and that information should be given to the comptroller of the amount of such credits. The chamberlain dissented from this denial of his authority to receive the accruing interest from the bank. But there was no disagreement as to the liability of the bank to pay, or the amount of the interest, but it related wholly to the authority by which it was to be drawn from the bank; and in consequence of this disagreement the bank omitted to pay out the interest, or to add it as a credit to the deposits, the chamberlain claiming that the interest should be proportionately applied to the city and the county money, and the bank was not disposed to attempt that apportionment, or to give the requested credits. Beyond this, further substantial evidence was given tending to support the averments that the defendant had agreed to pay this rate of interest upon the deposits of the city and county money; for, after the letter of the comptroller to the bank of the 16th of December, 1871, the president of the bank is stated to have waited personally upon him as to the subject-matter of that communication. And it is to be inferred from that circumstance, as well as other correspondence, that the president of the bank had an interview

with the comptroller concerning the disposition of this accruing interest. And from the letter of the president to the comptroller on the 30th of December, 1871, the further inference is justified that the president of the bank had submitted to the comptroller an opinion of the late Judge EDMUNDS concerning the dispute which had arisen between the comptroller and the chamberlain as to the manner in which the interest should be drawn from and paid by the bank; for by the letter the comptroller was requested to return the opinion which had been obtained from Judge EDMUNDS. This opinion reviewed the state of affairs arising out of the disagreement with considerable elaboration; and it is to be presumed from its contents that the entire subject, including the obligation of the bank to pay interest upon the daily deposits, had been presented to Judge EDMUNDS for his consideration and opinion; and that, as a part of the case presented to him, the obligation of the bank to pay this interest had, as a matter of fact, been conceded. If it had not been, there is no reason for supposing that the language employed in the opinion concerning the obligation of the bank would have been used by the counsel. That language carries with it a very decided implication that the counsel had been requested to advise the bank what it should do as to the interest which it was liable to pay, accruing on the deposits after the last of November, 1871. Indeed, if that had not been the design, but the bank was under no obligation to pay interest on these deposits, then there was no necessity whatever for consulting counsel upon the subject. That was not the consultation which had taken place, but it was to ascertain what the bank should do as to this interest, in view of the disagreement existing between the chamberlain and the comptroller; and in the opinion returned by him to the bank, which does not appear to have been dissented from on the part of the bank, he refers to the fact of the defendant having been selected as one of the depositories of the public moneys under this law of 1866; and then adds: "And a contract was made between him and the bank that interest should be paid on the monthly balances. That contract has been carried out now for several years by a computation of the interest earned every month, and the payment of it to the chamberlain, who, out of the amount thus received, has paid the expenses of his office, and the balance into the treasury. Now, however, the comptroller has given notice to the bank not to pay any more of that interest to the chamberlain, but to add it to the amount on deposit, and the chamberlain has given notice to the bank that it must not obey those orders of the comptroller, but must continue to pay over the interest to him as heretofore; and my opinion is asked by the bank what it shall do under the circumstances." And, after referring to the different sources from which the moneys deposited were from time to time obtained, it is further stated that "it is on moneys belonging to all three of these ownerships that interest is earned, and when paid over to the chamberlain, as has heretofore been done, the distribution of it among the parties by whose moneys it has been earned has devolved upon that officer." And by way of conclusion the suggestion is made, not that the bank could be exonerated from the obligation of paying interest upon the deposits, but "that those officers be seen, and some arrangements be effected by which the difficulties may be obviated; but, if that cannot be done, then I advise the bank (they first paying their proportionate share of the expenses of the chamberlain's office, for by accepting the deposits the bank has bound itself to do so) to refuse to comply with the comptroller's demands, and also refuse to pay the interest to the chamberlain, but at the end of the month to send to comptroller and to the chamberlain a statement of the amount of the interest then due, after deducting such expenses, with a notice that the bank will take immediate measures to obtain leave to pay the money into court for the benefit of whom it may concern." And these statements all concur in maintaining the continued liability of the bank to pay interest upon the deposits.

On the 3d of February, 1872, a further communication reiterating his previous requests was made by the comptroller to the bank; and it is stated in the stipulation that this was considered by the directors, whose only action taken thereon was to refer the same to the chamberlain. At that time the president of the bank had become the chamberlain, and it was to him that this subject had in this manner been referred by the directors. And on the 7th of February, apparently under this authority, he wrote a letter to the comptroller stating that the letter of the 3d had been received "in relation to the question of interest on the deposits of city and county funds, and I am as well aware as you can be of the necessity of having some definite rules established in regard to that interest. That interest is the result, not of any statutory direction or enactment, but is the product of bargains made by the chamberlain with banks which he may select as depositories of the funds in his hands, and all of it belongs to the owners of the principal of these funds, excepting only so much as he may by law be authorized to deduct for the expenses of his office." In writing this letter, he was acting as much under the authority of the directors of the bank as he was in his capacity of chamberlain; and what he in this manner stated in the communication to the comptroller was warranted by the fact that the directors had submitted the subject to him; and his statement accordingly was evidence against the bank that bargains had in fact been made by the chamberlain with the depository banks for the payment of this interest; and, as it appeared further by the stipulation that no action had been taken by the stockholders or the board of directors of the defendant, as to the interest on the daily balances between the 30th of November, 1871, and the 27th of May, 1873, the conclusion necessarily follows that no change in this state of the affairs had taken place on the part of the bank. It had in no manner denied the existence of an agreement to pay interest upon the balances, nor its liability to make such payments whenever the dispute between the chamberlain and the comptroller should be adjusted, and the payments could be made with the certainty that they were authorized, and would be allowed in satisfaction of the claim.

Evidence was given by Mr. Palmer, the president of the bank, concerning these transactions, but it did not definitely result in anything which was said to relieve the bank from the obligations imposed upon it by the agreement to pay interest. As to that obligation, if it was created at all, it was not by this witness, but probably by the cashier of the bank; and that it was in fact created was proved with a very satisfactory degree of clearness by the circumstances and correspondence already referred to; and the right to recover the accrued interest became vested in the city itself so far as it should be derived from the deposits of moneys belonging to the county. The act of 1866 did not direct the chamberlain to reserve, either for the city or the county, interest upon the deposits which he should make. Neither did it forbid such a reservation of interest, or the making of contracts with the banks by which they should become obligated to pay interest. But the omission of the act to direct interest to be reserved did not deprive the chamberlain of the authority, when that could be done, to stipulate for the reservation and payment of interest upon the balances remaining on deposit of the public moneys. Certainly before the passage of this act such an agreement could legally be made, for it was incidental to the deposit of the moneys and the enjoyment of the benefit of such deposits by the banks selected to receive them. And the act of 1866 in no respect attempted to abridge or divest the chamberlain of this authority. It did provide that the banks in which the deposits should be made should proportionately pay the rent of the office of the chamberlain, and the salaries to be fixed by him of his clerks and a deputy chamberlain. But no negative language was employed forbidding the chamberlain to reserve still more beneficial terms for the city for the use of its moneys remaining on deposit; and, as long as the act neither in language nor theory prohibited him from secur-

ing an obligation for the payment of interest upon the daily balances of the deposits, he was at liberty, when that could be done, to stipulate for the reservation and payment of that interest.   The case in this respect is within what was said in *U. S.* v. *Tingey*, 5 Pet. 115, that "the United States, being a body politic, may, within the sphere of the constitutional powers confided to it, and through the instrumentality of the proper department to which those powers are confided, enter into contracts not prohibited by law, and appropriate to the just exercise of those powers." Id. 128.   Without the act of 1866, the chamberlain was clearly authorized to secure the best terms he could for the benefit of the city and county from the depositories of their moneys; and, as that·act in no manner forbade this to be afterwards accomplished, it is clear that it did not abrogate this preceding authority incidental to the city and county as bodies politic and corporate.   And what was decided in *People* v. *Board*, 75 N. Y. 38, in no way draws in question this authority.   There the right determined depended wholly upon the authority of the statute, and it was held to be alone obligatory upon the board of police representing the city. The legislation considered was held to limit the power allowed to be exercised, and the relator's rights were controlled by that authority instead of what had transpired between himself and the other officials of the city.   The case has no application to this controversy; neither has that of the *Shepherd's Fold* v. *Mayor, etc.,* 96. N. Y. 137.

There was nothing illegal, or against the policy of the law, in the reservation of interest upon these deposits, and the bank has derived the benefit expected to be secured from the deposits under the agreement which was entered into.   And, after deriving this benefit in this manner, the law will not permit it to resist this demand for interest by taking the ground that the chamberlain was not authorized to make the agreement which was entered into for its payment.   *Woodruff* v. *Railway Co.*, 93 N. Y. 609, 619; *Whitney Arms Co.* v. *Barlow*, 63 N. Y. 62; *Raft Co.* v. *Roach*, 97 N. Y. 378; *Mayor, etc.,* v. *Sonneborn*, 113 N. Y. 423, 21 N. E. Rep. 121.

The stipulation used upon the trial contained other correspondence passing between the chamberlain and the comptroller, and between the former and the mayor, which was not competent evidence upon the trial of this action. Neither was it pertinent to prove what had taken place with the other depository banks concerning the payment and collection of interest on the daily balances.   But the admission of this evidence does not require the reversal of the judgment, for the liability of the defendant for the payment of the interest was so clearly made out as to leave it in no sense dependent upon any of the evidence which should have been omitted upon the trial.   This evidence was embodied in the stipulation with the other which was pertinent and relevant to the controversy; and it was stipulated that the plaintiff gave *prima facie* evidence of the facts mentioned in the stipulation.   But as to the parts of the stipulation which were not pertinent to the issues in this action, as well as to other portions which were, it is stated that the evidence was objected to under the foregoing stipulation as *res inter alios acta*, and exception taken.   But it does not appear that either of these objections were brought to the attention of the court upon the trial, or that in the course of the trial any exception was made to the admissibility of so much of the stipulation as has in this manner been referred to.   Both the objections and the exceptions have probably been inserted in the case under another stipulation dated on the 1st of June, 1887; for by that it appears that the matters contained in the stipulation of facts dated on the same day were, "upon the express understanding and agreement that, in case the defendant shall appeal or make any motion herein, then any case, minutes, or record of the trial, which may be used on such appeal or motion, shall state that plaintiffs offered evidence of the facts covered by said stipulation, and that defendant duly objected thereto, and duly excepted to the overruling of defendant's objection, and such

case, minutes, or records shall be made in substance and forms so as to save all rights of objection and exception to the defendant, and shall be so framed to preserve all such rights." And from that it is obvious that the objections and exceptions were not considered by any ruling of the court, but were inserted in this manner under the authority of the agreement made between the counsel. And it would be conspicuously unfair to allow the judgment to be disturbed because of the admission of these several matters when the attention of the court had not been called to any question involving the point, but they were inserted in the case only because of the stipulation entered into between the counsel for the parties. Many other authorities have been cited by the counsel in the elaborate briefs presented on behalf of each of the parties. But they do not require to be noticed, for the reason that those which have already been mentioned appear to be decisive of the appeal; and the same may be said as to subordinate objections which have not been referred to, for those which have been considered control the disposition of the action; and, as the judgment appears to be right, it should be affirmed. All concur.