# Disclosure of Confidential Business Records Obtained Under the National Traffic and Motor Vehicle Safety Act

National Highway Traffic Safety Administration (NHTSA) is not authorized to release confidential information and trade secrets obtained pursuant to § 112 of the National Traffic and Motor Vehicle Safety Act to the Federal Trade Commission (Commission) for use in a pending investigation of possible unfair and deceptive trade practices; § 112(e) precludes disclosure to agencies other than those charged with enforcing Title I of that Act, except in accordance with 18 U.S.C. § 1905.

Under 18 U.S.C. § 1905, confidential corporate records may be released if authorized by law; in the present situation only § 8 of the Federal Trade Commission Act, which confers on the President power to authorize disclosure to the Commission of confidential business information protected by § 1905, constitutes such authority.

Executive Order No. 12,174 is designed to minimize paperwork burdens on executive agencies, and does not authorize the NHTSA to disclose information protected by § 1905; nor does § 9 of the Federal Trade Commission Act provide such authority, at least in cases where the Commission has not sought to obtain the information through a request to the President under § 8, or directly from the party under investigation.

August 15, 1980

## MEMORANDUM OPINION FOR THE CHIEF COUNSEL, NATIONAL HIGHWAY TRAFFIC SAFETY ADMINISTRATION

This responds to your letter inquiring whether confidential information and trade secrets received by your agency pursuant to § 112 of the National Traffic and Motor Vehicle Safety Act (Safety Act), 15 U.S.C. § 1401, may be released by it to the Federal Trade Commission (Commission) for use by the Commission in a pending investigation of possible unfair and deceptive trade practices.

The opinion of this Office dated December 19, 1977 concluded that § 112(e) of the Safety Act precluded such a release [1] because of the

---

[1] Section 112(e) provides:

(e) Except as otherwise provided in section 158(a)(2) and section 113(b) of this title, all information reported to or otherwise obtained by the Secretary or his representative pursuant to this title which information contains or relates to a trade secret or other matter referred to in section 1905 of title 18 shall be considered confidential for the purpose of that section, except that such information may be disclosed to other officers or employees concerned with carrying out this title or when relevant in any proceeding under this title. Nothing in this section shall authorize the withholding of information by the Secretary or any officer or employee under his control, from the duly authorized committees of the Congress.

15 U.S.C. § 1401(e). We discussed the special situations covered by § 113(b), 15 U.S.C. § 1402(b), and § 158(a)(2), 15 U.S.C. § 1418(a)(2) in our 1977 opinion. They do not appear to be applicable to the issues here involved.

specific reference in that section to 18 U.S.C. § 1905, prohibiting generally the disclosure of confidential information and trade secrets in the possession of federal agencies unless authorized by law,[2] and further concluded that the Federal Reports Act, 44 U.S.C. § 3508, was inapplicable.

You now have asked us to reexamine our 1977 opinion in the light of our subsequent interpretation of a different statute, *viz.*, § 505(d) of the Motor Vehicle Information and Cost Savings Act of 1972, as added by § 301 of the Energy Policy and Conservation Act of 1975, 15 U.S.C. § 2005(d),* and in light of Executive Order No. 12,174, 3 C.F.R. 462 (1979), entitled "Paperwork." Recognizing the importance of the matter, we have carefully reexamined our 1977 opinion. We are convinced of the correctness of our conclusion that trade secrets and confidential information obtained by your agency pursuant to § 112 of the Safety Act cannot be released to the Commission. We are reinforced in that view by the provisions in § 112(e), which authorize the disclosure of such information to agencies carrying out Title I of the Safety Act, thus indicating by implication that the information may not be made available to agencies that do not have those functions.

I.

An important basis for our 1977 opinion was the holding in *Morton* v. *Mancari,* 417 U.S. 535, 550–51 (1974), that in the absence of a clear intention to the contrary "a specific statute will not be controlled or nullified by a general one, regardless of the priority of enactment." Section 112(e) is not only a later enactment than the Federal Reports Act,[3] but also deals with the specific issue of the disclosure of information received pursuant to Title I of the Safety Act, rather than, as does the Reports Act, with the general matter of the intragovernmental exchange of information. Section 112(e) therefore prevails over the

---

[2] Section 1905 provides:

Whoever, being an officer or employee of the United States or of any department or agency thereof, publishes, divulges, discloses, or makes known in any manner or to any extent not authorized by law any information coming to him in the course of his employment or official duties or by reason of any examination or investigation made by, or return, report or record made to or filed with, such department or agency or officer or employee thereof, which information concerns or relates to the trade secrets, processes, operations, style of work, or apparatus, or to the identity, confidential statistical data, amount or source of any income, profits, losses, or expenditures of any person, firm, partnership, corporation, or association or permits any income return or copy thereof or any book containing any abstract or particulars thereof to be seen or examined by any person except as provided by law; shall be fined not more than $1,000, or imprisoned not more than one year, or both; and shall be removed from office or employment.

*NOTE: An opinion of the Office dated April 27, 1978 concluded that business secrets obtained under Title V of the Motor Vehicle Information and Cost Savings Act of 1972 may generally be made available to other government agencies even though they may not be disclosed to the public. Ed.

[3] While 44 U.S.C. § 3508 was technically enacted in 1968 as the result of the codification of title 44, U.S. Code, *i.e.,* subsequent to the 1966 enactment of the Safety Act, its enactment actually dates back to the Federal Records Act of 1942, Pub. L. No. 78-192, 57 Stat. 380 (1943).

Reports Act. *Morton* v. *Mancari* has repeatedly been cited with approval in recent decisions of the Supreme Court. *See, e.g., The Regional Rail Reorganization Act Cases,* 419 U.S. 102, 133–34 (1974); *Administrator, FAA* v. *Robertson,* 422 U.S. 255, 265–66 (1975); *United States* v. *United Continental Tuna,* 425 U.S. 164, 168–69 (1976); *Radzanower* v. *Touche Ross & Co.,* 426 U.S. 148, 153 (1976). Significantly, the issue in *Robertson* is analogous to the one here presented, namely, whether the general disclosure provisions of the Freedom of Information Act, 5 U.S.C. § 552, prevail over the specific confidentiality provisions of § 1104 of the Civil Aviation Act, 49 U.S.C. § 1504 (Supp. III 1979). Two recent decisions of the Supreme Court, *Chrysler Corp.* v. *Brown,* 441 U.S. 281 (1979), and *Consumer Product Safety Comm'n* v. *GTE Sylvania, Inc.,* 447 U.S. 102 (1980), further indicate that a specific statutory confidentiality provision is not easily overcome.

Your letter and a letter we have received from the Commission each suggest that the confidentiality of information submitted pursuant to Title I of the Safety Act would be adequately protected even if the Reports Act were applicable because confidential information made available by one agency to another one pursuant to the Reports Act still would have to be treated as confidential by the recipient agency. The purpose of § 112(e) of the Safety Act is, however, as appears from its very language, to protect confidential information received under the Safety Act not only from the public and from competitors but also from government agencies, except those that carry out that title. The Safety Act is one of a group of statutes, called Required Report Statutes, frequently part of safety legislation, which require the reporting of possibly self-damaging information in exchange for varying degrees of confidentiality. The underlying rationale is that persons are to be encouraged accurately to report what may be incriminating information that the government otherwise could not obtain at all or only with much delay or difficulty, in exchange for a promise that the information will not be disclosed freely. *See, e.g.,* 2 J. Weinstein 8 M. Berger, *Weinstein's Evidence,* ¶ 502[02] (1979); *The Required Report Privileges,* 56 Nw. U.L. Rev. 283, 286 (1961); 8 J. Wigmore, Evidence in Trials at Common Law, § 2377(f) (J. McNaughton Rev. 1961)).

Those who report confidential information to agencies dealing essentially with safety considerations are concerned not only with disclosures to the public at large or to their competitors. They also fear, possibly even more so, the disclosure of that information to regulatory or law-enforcing agencies. Thus, after the Supreme Court held in *St. Regis Paper Co.* v. *United States,* 368 U.S. 208, 215–220, (1961), that the Federal Trade Commission could subpoena the retained copies of census reports, the response of at least some firms to census surveys deteriorated with a corresponding reduction of the accuracy of census statistics. *See* Report of the Secretary of Commerce to the President,

dated July 24, 1962, *reprinted in* S. Rep. 2218, 87th Cong., 2d Sess. p. 2-3 (1962).[4] Similarly, it may be anticipated that firms will be less willing to submit correct and complete information under the Safety Act if they must expect that this information will be shared with agencies such as the Commission, even if it will be withheld from the general public and from competitors. Accordingly, it is our view that a routine disclosure within the government—even if to the exclusion of the public at large—of information received pursuant to Title I of the Safety Act would be contrary to the statutory intent and contrary to the purposes that this Required Report Statute was designed to achieve.

## II.

The intended disclosure of the information to the Commission is thus governed by 18 U.S.C. § 1905.[5] That section does not absolutely prohibit the publication of confidential business information and trade secrets but only the disclosure of information to the extent "not authorized by law." The phrase "authorized by law" does not mean that the authorization must be "specifically authorized by a law"; it is sufficient that the disclosure is "authorized in a general way by law." 41 Op. Att'y Gen. 166, 169 (1953).

The following have been recognized as lawful sources of disclosure authority under § 1905 or its predecessors: subpoenas, *Blair* v. *Oesterlein Co.,* 275 U.S. 220, 227 (1927), *United States* v. *Liebert,* 519 F.2d 542, 546 (3rd Cir. 1975), *cert. denied,* 423 U.S. 985 (1975); requests of congressional committees acting within the limits of their jurisdiction and authority, 41 Op. Att'y Gen. 221, 226-28 (1955); regulations, provided that the authority on which the regulation is based includes the power to waive the confidentiality provisions of 18 U.S.C. § 1905, *cf. Chrysler Corp.* v. *Brown,* 441 U.S. at 294-316 (1975); or implication. Accordingly, the power to liquidate a government-owned financial institution has been held to carry with it the authority to disclose to potential purchasers of its assets confidential financial data submitted by its borrowers. 41 Op. Att'y Gen. 166 (1953).

We turn now to examine the three possible sources of "authority" pursuant to which your Agency may turn confidential business information over to the Commission. They are: (1) Executive Order No. 12,174 of November 30, 1979, 3 C.F.R. 462 (1979), designed to minimize federal paperwork burdens; (2) § 8 of the Federal Trade Commission Act, 15 U.S.C. § 48, pursuant to which the President may direct the several departments and bureaus of the government to furnish to the

---

[4] Congress thereupon amended 13 U.S.C. § 9(a) so as to render the retained copies of census reports immune from agency demands and legal processes. Act of October 15, 1962, Pub. L. No. 87-813, 76 Stat. 922.

[5] The two exceptions of § 112(e), namely, disclosure to Congress or to another agency carrying out Title I of the Safety Act, are not applicable here.

Commission on its request all records, papers, and information in their possession; and (3) § 9 of the Federal Trade Commission Act, 15 U.S.C. § 49, which confers subpoena power on the Commission.

1. Your letter suggests that the disclosure of confidential business information and trade secrets by your agency would be "authorized" by Executive Order No. 12,174, because that order, presumably § 1-106[a], "establishes a system for sharing information among federal agencies to eliminate duplication of information requests."[6] The language of § 1-106[a] does not on its face purport to require, or even permit, the sharing of information among federal agencies where disclosure is prohibited by statute. To the contrary, the second sentence of § 1-107 provides that the "Order shall be implemented in a manner consistent with all applicable Federal statutes." *Id.* Hence, the executive order shows by its own terms that it is not intended to constitute a "lawful authority" within the meaning of 18 U.S.C. § 1905. In these circumstances, it does not become necessary to go into the delicate question whether the President's general nonstatutory authority over the federal establishment would support an executive order authorizing or directing the disclosure of information which by statute is required to be kept confidential. As a rule, this general nonstatutory executive power cannot legalize action that is prohibited by law. *See, e.g., Youngstown Sheet & Tube Co.* v. *Sawyer,* 343 U.S. 579, 635-38 (1952) (Jackson, J. concurring); *United States* v. *Tingey,* 30 U.S. (5 Pet.) 115, 129 (1831); *United States* v. *MacDaniel,* 32 U.S. (7 Pet.) 1, 14-15 (1833). *Chrysler Corp.* v. *Brown,* 441 U.S. at 310-12 (1979), indicates that the prohibition of 18 U.S.C. § 1905 cannot be overcome by the exercise of a housekeeping authority.

In this connection your letter suggests that the Commission could obtain information identical to that in the possession of your agency by subpoenaing it directly from General Motors under § 9 of the Federal Trade Commission Act, 15 U.S.C. § 49. An interpretation of the law requiring your agency to withhold the information from the Commission therefore would result, in your view, in a needless duplication of effort in violation of the policy of the executive order and of the Federal Reports Act. This analysis overlooks the important factor that a subpoena under § 9 is subject to judicial review. For all we know a

---

[6] Section 1-106 provides, in pertinent part:

> 1-106. The Director [Office of Management and Budget] shall audit compliance with this Order and may issue rules and regulations necessary to implement it. The Director may issue exemptions for agencies whose use of forms is limited. The Director also shall:
>
> [a] Seek to eliminate duplication in requests for information by establishing a Federal information locator system, which will list all the types of information collected by Federal agencies and will be available for use by all agencies. This or similar systems will not contain any information obtained from the public. The Director shall take any other steps needed to prevent duplication, including the assignment to a particular agency of lead responsibility for the collection of certain types of information.

3 C.F.R. 462, 463 (1979).

corporation the size of General Motors furnishing information to your agency is far more concerned with the availability of judicial review of a § 9 subpoena, than with the mechanical burden of having to duplicate the reports submitted to your agency.[7] Proceeding by a § 9 subpoena rather than by an undisclosed intra-agency release of the documents therefore would not constitute a needless duplicative procedure but one which may prove to be of considerable value to General Motors. Of course, if General Motors wants to avoid the burden of having to duplicate the materials and has no objection to their release to the Commission, it can request your agency to turn the information over to the Commission. Such a request would unquestionably constitute an authority within the meaning of § 1905.

2. Section 8 of the Federal Trade Commission Act provides:

> The several departments and bureaus of the Government when directed by the President shall furnish the Commission, upon its request, all records, papers, and information in their possession relating to any corporation subject to any of the provisions of this subchapter . . . .

15 U.S.C. § 48.

Your letter suggests that your agency could release information to the Commission even without a presidential directive, because insistence on such "directive would impose an unnecessary burden on the Government." The legislative history of § 8, however, indicates that, although the section does confer on the president the power to authorize the disclosure of confidential business information within the meaning of 18 U.S.C. § 1905, presidential action is not an idle formality but an indispensable prerequisite for such release.

During the debates on the Federal Trade Commission Act in the House of Representatives, Congressman Mann inquired whether and to what extent confidential corporate records in the possession of a government agency would be furnished to the Commission under § 8. Congressman Covington, the sponsor of the bill, explained:

> MR. COVINGTON. I think that is quite true. Those returns ought not to be furnished except, perhaps, in an extremely urgent case. The first draft of this section, as prepared by the committee, did not have in it the qualifying clause "when directed by the President." In the first draft of the section the provision as inserted was the same as the provision for the same purpose contained in the law creating the so-called Handley Commission. That contained one of the broadest powers that has ever been

---

[7] According to the preamble, and § 1-103 of the executive order, the order is designed to minimize the paperwork burden on the public, "in particular, individuals and small organizations." 3 C.F.R. 462 (1979).

conferred upon a commission to obtain from any of the bureaus or departments of the Government any information which it desired.

MR. MANN. That is very true, but that was before the income-tax law was in effect.

MR. COVINGTON. If the gentleman will hear me through. We then determined, however, that by limiting the authority to turn over such information by direction of the President, all the safeguards that ought to surround any class of information would be in the possession of the Government.

51 Cong. Rec. 9045 (1914).[8] Accordingly, § 8 does constitute an "authority" for the release of confidential business information and trade secrets, but only after the President has determined the need for the release of such information and directed that it be furnished to the Commission.[9]

3. Section 9 of the Federal Trade Commission Act, 15 U.S.C. § 49, confers subpoena power on the Commission. It has been construed as not limited to parties to proceedings before the Commission or to persons under investigation by it, but as extending also to witnesses or other third parties who have custody of pertinent documentary evidence. *Federal Trade Commission* v. *Tuttle,* 244 F.2d 605, 611–16 (2d Cir. 1957), *cert. denied,* 354 U.S. 925 (1957); *Federal Trade Commission* v. *Cockrell,* 431 F. Supp. 561, 563 (D.D.C. 1977). The question, therefore, is whether the Commission could subpoena from your agency information received by it under Title I of the Safety Act and whether a release of the information pursuant to the subpoena would be "authorized by law" within the meaning of 18 U.S.C. § 1905. On this question there is an area of disagreement between the Department of Justice and the Commission. We take the position that since § 8 of the Federal Trade Commission Act is the specific procedure pursuant to which the Commission can obtain records, papers, and information in the possession of the government agencies, it is also the exclusive one;[10] and that an interpretation of § 9 giving the Commission power to subpoena government agencies, would undermine the President's responsibility, specifically conferred on him by § 8, to determine the situations in which the confidentiality of government documents may be waived. In a recent interlocutory order issued in *In re Exxon Corp. et al.,* 95 F.T.C. 919 (1980), the Commission has taken the position, that,

---

[8] There was no corresponding discussion in the Senate debate because the Senate version of the Federal Trade Commission legislation did not have an equivalent to § 8.

[9] The remote possibility that the President might direct a disclosure of confidential information pursuant to § 8 is not likely to affect the cooperation of corporations with your agency. *See United States* v. *Nixon,* 418 U.S. § 683, 711–713 (1974).

[10] *See, e.g., National Railroad Passenger Corp.* v. *National Ass'n of Railroad Passengers,* 414 U.S. 453, 458 (1974).

in view of its status as an independent agency, its power to obtain information cannot be frustrated by the President's refusal to make information available to it under § 8. Nevertheless, the Commission's order indicates that, as against an agency in the executive branch, the Commission will exercise its subpoena power under § 9 only after it has proceeded unsuccessfully under § 8 and then only in the most compelling circumstances, especially if the information cannot be reasonably obtained by other means. In the situation at hand, the information is subject to subpoena directed to the party under investigation. Hence, under the Commission's own interpretation of the law, it could not direct a subpoena to your agency for the data in its possession.

LEON ULMAN
*Deputy Assistant Attorney General*
*Office of Legal Counsel*