### UNITED STATES v. JAEDICKE et al.

(District Court, D. Kansas, First Division. March 30, 1896.)

1. RES JUDICATA — CRIMINAL AND CIVIL SUITS — ACTION ON OFFICIAL BOND OF POSTMASTER.

The acquittal of a defendant under an indictment for making false and fraudulent returns, as postmaster, of the business done at his office, for the purpose of increasing his compensation, is not a bar to an action by the United States upon the bond of such defendant, as postmaster, to recover the amount found due to the government from defendant, upon the adjustment of his accounts, as shown by the same returns.

2. EVIDENCE—ACTION OF GOVERNMENT DEPARTMENTS.

In an action by the government on the official bond of a postmaster, a transcript from the treasury department, attached to the petition, showing an order of the postmaster general withholding commissions from such postmaster, and allowing him a salary, and showing the adjustment of his accounts in accordance therewith, is not conclusive as to all action in the matter by the post office or treasury departments, but the defendants should be permitted to show that other action was taken, if deemed material to their defense.

W. C. Perry, for the United States.

David Overmeyer and Eugene Hagan, for defendants.

FOSTER, District Judge. This is a civil suit, brought on an official bond, to recover judgment against the defendants in the sum of $527.49. The petition alleges:

That August Jaedicke was postmaster at Hanover, in this state, from May, 1889, to April, 1892, and that the above-named defendants, in April, 1889, executed their bond to the said plaintiff in the sum of $6,000, conditioned for the faithful performance of official duties by said Jaedicke as such postmaster. That said post office at Hanover was a post office of the fourth class, and that the compensation of said postmaster was the whole of the box rent collected at said office, and the commission upon the amount of canceled postage due stamps, and on postage stamps, official stamps, stamped envelopes, postal cards, and newspaper and periodical stamps canceled on matter actually mailed at said office, and on amounts received from waste paper, dead newspapers, printed matter, and twine, sold at the following rates, to wit: On the first $100 or less per quarter, 60 per centum; on all over $100, and not over $300, 50 per centum; and on all over $300, 40 per centum,—the same to be ascertained and allowed by the auditor in the settlement of the accounts of said postmaster upon his sworn quarterly returns. That said August Jaedicke was required by law to make quarterly returns to the post-office department, showing the business transacted at his office, and that said defendant did make quarterly returns during the time he held said office. That the postmaster general being satisfied that said August Jaedicke, in his quarterly statements, had made false returns of the business transacted at said Hanover post office, under the authority vested in him by law (20 Stat. 141), on February 7, 1894, issued an order withholding commissions on the returns of said August Jaedicke, and allowed him as compensation, in place of commissions and box rent, the sum of $145 a quarter from May 21, 1889, to March 31, 1892, and directed the auditor of the treasury for the post-office department to adjust the accounts of the said August Jaedicke, postmaster, in accordance with said order. That defendant's accounts were so adjusted by the auditor, and there was found due the United States from said August Jaedicke the sum of $527.19, for the payment of which sum demand has been duly made on said defendants, and payment refused.

The defendants admit the making by Jaedicke of quarterly returns to the post-office department, and assert:

That said returns were made in accordance with the law, and in proper form; and that the same were made honestly and in good faith, and contained a correct statement of the business of said Hanover post office during said period; and that the same were transmitted to the post-office department, and were received by the auditor of the treasury of that department, and were by the postmaster general and the said auditor examined, found to be correct, and were duly approved. "That, after the same had been found to be correct and approved, a salary was allowed the said August Jaedicke as postmaster, based upon a per cent. of the cancellation of stamps, as required by the act of congress, and which said salary was duly and formally paid to said August Jaedicke out of the treasury of the United States, under the directions of the postmaster general and the said auditor."

For a further defense, defendants allege:

"That on the 27th day of April, 1892, at a term of the district court of the United States of America, in and for the First division of the district of Kansas, a grand jury, duly impaneled at said term of court to inquire into offenses committed against the laws of the United States, returned an indictment against the said defendant August Jaedicke, which said indictment embraced twelve counts, and each count of said indictment named a separate and distinct offense against the said defendant August Jaedicke. That the charge in each count contained in said indictment was that the said August Jaedicke did make and return to the auditor of the treasury for post-office department, for the purpose of increasing his compensation, false and fraudulent returns of the number and value of stamps canceled by him as postmaster, and while acting as such, during said period named in the petition herein. That said returns, made at the end of each quarter, by the said August Jaedicke, were false and fraudulent, in this: that they contained a larger amount than was in truth and fact canceled at said post office by him while acting as postmaster. That the quarterly returns upon which the said August Jaedicke was indicted, as aforesaid, were the same identical ones designated and embraced in the petition herein, and that he made no other or different ones during said period of time. Defendants further state that to said indictment the said August Jaedicke, when arraigned, pleaded not guilty. That afterwards, to wit, on or about the 16th day of April, 1894, a jury was duly and formally impaneled in said case, to try the said defendant on said charges contained in said indictment. That testimony was submitted to the said jury in support of said charges contained in said indictment, and among other things submitted to the jury as testimony were the identical quarterly reports embraced in the petition herein. That after hearing all of said testimony and the instructions of the court, and after due deliberation, the said jury returned a verdict of not guilty against the said defendant upon the first, second, third, fourth, fifth, sixth, seventh, eighth, ninth, and tenth counts of said indictment. That an order by the said court was immediately thereupon entered discharging the prisoner, without day, and releasing him from custody as to the ten counts in said indictment. Defendants further allege that on or about the 10th day of December, 1894, the said defendant August Jaedicke was, in the manner above set forth, duly and formally tried upon the eleventh and twelfth counts of said indictment, and was duly acquitted."

To this answer, plaintiff moves to strike out so much of the first defense as sets forth the auditing and approval of the quarterly returns by the postmaster general and the auditor of the treasury, and the allowance and payment of the salary to August Jaedicke based on said returns. To the last defense, plaintiff files a general demurrer, that the same does not constitute a legal defense to plaintiff's petition.

The motion to strike out is based on the idea that the transcript from the treasury department attached to the petition contains and is conclusive of all action had in the matter by the post-office department or auditor of the treasury; but the answer does not rest on that assumption, but asserts that certain things were done and performed, and a certain salary allowed and paid to Jaedicke. Without deciding at this time how far the government may be estopped to make this demand, and the postmaster general to adjust the compensation of the defendant Jaedicke, as was done in this case, it is proper that defendants have an opportunity to prove their assertions in that behalf, and the motion to strike out must be overruled.

The chief controversy is on the demurrer. Did the indictment, trial, and acquittal of the defendant Jaedicke, in the criminal prosecution, bar the plaintiff from maintaining this suit? It is insisted

by the defendants that the matter is res judicata. The identity of the quarterly returns referred to in this suit, and those on which the indictments were based as being false and fraudulent, and trial and acquittal had, is not disputed. Ordinarily, public prosecutions do not bar civil actions relating to the same matter. Usually, the parties are different, and the evidence of a different nature. Wells, Res Adj. § 429; 21 Am. & Eng. Enc. Law, 239.

In the case at bar the parties are the same, and the defendants contend that the evidence and the facts to be proven are the same. The case chiefly relied on to sustain this contention is Coffey v. U. S., 116 U. S. 436, 6 Sup. Ct. 437. That case was a proceeding in rem, wherein the government sought to declare a forfeiture of certain distillery products and property, for violation of sections 3257, 3450 and 3453 of the Revised Statutes. Those sections denounced a fine and imprisonment for a violation of their provisions, and also for the forfeiture of the property, etc. The forfeiture is a part of the punishment for the violation of the law, and the court holds that an acquittal in a criminal prosecution under those sections barred civil proceedings to forfeit the property. The court say:

"Nevertheless, the fact or act has been put in issue, and determined against the United States, and all that is imposed by the statute as a consequence of guilt is a punishment therefor."

The forfeiture, as well as the fine and imprisonment, was imposed by the statute as a punishment in consequence of guilt. So says the court, and this proceeding amounted to a second trial, to secure a part of the penalty imposed as a consequence of guilt.

Again, the court says, at bottom of page 444, 116 U. S., and page 437, 6 Sup. Ct.:

"So, the facts cannot be again litigated between them as the basis of any statutory punishment denounced as a consequence of the existence of the facts."

In U. S. v. McKee, 4 Dill. 128, Fed. Cas. No. 15,688, it was sought to hold the defendant in a civil action for a penalty denounced as part punishment for a conspiracy to defraud the government out of the tax on distilled spirits. The court held such penalty was a part of the punishment denounced for the crime, and the civil suit was barred by the criminal proceeding.

In Stone v. U. S., 12 C. C. A. 451, 64 Fed. 670, which was a civil suit to recover for timber cut from government land, after the defendant had been acquitted on a criminal charge, the rule is laid down thus:

"One of the safest rules for courts to follow in determining whether a prior judgment between the same parties concerning the same matters is barred is to ascertain whether the same evidence which is necessary to sustain the second action, if it had been given in a former suit, would have authorized a recovery therein."

The court then points out the difference in the testimony required to convict in the criminal case and to recover judgment in the civil action. In the former case it was necessary for the government to prove that the defendant did unlawfully, willfully, and feloniously

cut and remove trees growing upon said land, whereas in a civil suit the plaintiff had only to prove title to the land, the value of the timber taken, and that defendant received and converted the timber to his own use. In the criminal case it must appear that the defendant did the act with the intent and purpose to defraud the government. In the civil case the defendant might have been an innocent trespasser, or a purchaser from the trespasser, and be liable for the value of the timber taken.

From these decisions it is apparent that if this suit is to recover a penalty or forfeiture denounced by the law as a punishment in whole or in part for the crime of which this defendant has been tried, or if the testimony or the facts necessary to be proven in the two cases are the same, then the former acquittal is a bar. The authority conferred on the postmaster general is as follows:

"That in any case where the postmaster general shall be satisfied that the postmaster has made a false return of business it shall be within his discretion to withhold commissions on such returns and to allow any compensation that under the circumstances he may deem reasonable." 20 Stat. 141.

This does not imply that the postmaster general shall impose a penalty or forfeiture upon the recreant postmaster as a punishment; but, inasmuch as the returns are false, they cannot be used as a basis to fix the compensation, and, of necessity, some other plan must be adopted. The arbitrary power is given the postmaster general to fix the compensation, and, in doing so, he has to consider the circumstances, and determine what is reasonable,—i. e. what would be right and proper,—approximating what the postmaster would have received if his returns had been correct; and this whether the returns were false from inadvertence, incompetency of himself or his assistant, or for the purpose of fraudulently increasing his compensation.

The criminal provision of the statute reads as follows:

"And any postmaster who shall make a false return to the auditor for the purpose of fraudulently increasing his compensation, under the provisions of this or any other act, shall be deemed guilty of a misdemeanor," etc.

In the criminal case it was necessary to prove that the returns were not only false, but that they were falsified by the defendant, and with the fraudulent intent of increasing his compensation beyond the amount allowed him by law. The amount sued for in this case is not a forfeiture or penalty, but simply a sum improperly withheld by the defendant in excess of his legal compensation. Therefore, neither the facts to be established nor the testimony to be adduced are the same as required in the criminal prosecution.

The motion to strike out part of the answer of defendants is overruled, and the demurrer to the last defense is sustained.