## McDONALD v. HEARST.

(District Court, N. D. California. July 17, 1899.)

No. 274.

1. COPYRIGHT—ACTION TO RECOVER PENALTY FOR INFRINGEMENT—LIABILITY OF MASTER FOR ACTS OF SERVANTS.

An action brought under Rev. St. § 4965, to recover for the unauthorized printing and publication of a copyrighted map, the recovery being fixed by the statute at one dollar for each sheet containing a copy of the map so published found in the defendant's possession, to be divided equally between the proprietor of the copyright and the United States, is not an action for compensatory damages, but to enforce a penalty imposed for a violation of the copyright law; and upon the same principle which exempts a master from payment of exemplary damages for the unauthorized act of his servant, in which he did not participate, it is a good defense to such an action that the publication was made by agents and servants of defendant, in his absence, and without his direction, consent, or knowledge.

2. PENALTIES—RECOVERY BY CIVIL SUIT.

The fact that a statutory penalty is made recoverable by a civil action instead of a criminal prosecution, does not change the penal character of the recovery.

On Demurrer to Answer.

Henry Thompson, for plaintiff.

Garret W. McEnerney, for defendant.

DE HAVEN, District Judge. This is a qui tam action, brought under section 4965 of the Revised Statutes, to recover the sum of $82,729. The complaint alleges, in substance, that the defendant, within the period of two years prior to the commencement of the action, without the consent of plaintiff first obtained in writing, and signed in the presence of two or more witnesses, did unlawfully and wrongfully copy, print, and publish at the city and county of San Francisco, in a newspaper known as the Examiner, the material part of a certain copyrighted map of which the plaintiff was then, and is now, the owner and proprietor; and also that, knowing that the material part of the map had been so copied, printed, and published in that newspaper, the defendant, within the same time, sold and exposed for sale at the city and county of San Francisco copies of the newspaper in which the same was printed and published; and that on or about the 22d day of August, 1897, there were found in the possession of the defendant 82,729 sheets of the issue of the Examiner of that date, each sheet containing a printed copy of the material part of the copyrighted map, so printed and published without the consent of plaintiff.

Upon these facts the plaintiff demands judgment against the defendant for the sum of $82,729, to be equally divided between himself and the United States. The defendant, in his answer, denies all the material allegations of the complaint, and, in addition thereto, for a further and separate defense alleges that he was absent from California during all of the year 1897, and that during that year the Examiner was published and conducted by him through his servants, agents, and employés, one of whom was the business manager, and the other the managing editor of the paper; that both were competent, and that "the matters set forth in the plaintiff's complaint were inserted in the Examiner without the knowledge, consent, procurement, or connivance of the defendant; that the defendant did not discover, know, or learn that the said matter, or any part thereof, had been inserted in the said newspaper, until long after the publication of the issue of the Examiner of the 22d day of August, 1897; and that the defendant did not cause or direct the insertion of the same, or any part thereof." The plaintiff has interposed a general demurrer to this special defense.

1. This answer must, in the face of a general demurrer, be construed as sufficiently alleging that the defendant did not personally participate in the commission of either of the wrongful acts complained of, nor authorize his servants or agents to commit such alleged wrongs; that the acts complained of were done without his knowledge, consent, or approval, and during his absence from the state of California, by his servants and agents, in the course of the general business which he had committed to their care; and that such servants and agents were competent and qualified to discharge the duties for which they were employed by defendant. The precise question, then, raised by the demurrer is whether these facts, if established upon the trial, would constitute a defense to the action. The argument to the contrary is rested mainly upon the general principle that the master is civilly liable to respond in damages for the wrongful act of his servant committed in the transaction of the business which he was employed by the master to do, although the particular act complained of may have been done without express authority from him, or even against his orders. This principle of law is so well settled that no authorities need be cited in its support. But, according to the best-reasoned cases, when the wrongful act of the servant, although committed in the performance of duties imposed by his employment, was done without the authority, knowledge, or approval of the master, the rule just stated is not broad enough to render the latter liable for punitive damages on account of such act of his servant, in the absence of gross negligence in the employment, or in the retention of the servant after knowledge of his unfitness or incompetency; that is, under such circumstances there can be no recovery against the master of damages which the law visits upon the wrongdoer by way of punishment only, and not for the purpose of compensating the injured party for the damage in fact sustained by him. Cleghorn v. Railroad Co., 56 N. Y. 44; Post Co. v. McArthur, 16 Mich. 447; Turner v. Railroad Co., 34 Cal. 594; Warner v. Pacific

Co., 113 Cal. 105, 45 Pac. 187; Railway Co. v. Prentice, 147 U. S. 101, 13 Sup. Ct. 261. In the case last cited the supreme court enters into a full discussion of the question, and the following extract from the opinion states the conclusion reached:

"Exemplary or punitive damages, being awarded, not by way of compensation to the sufferer, but by way of punishment of the offender, and as a warning to others, can only be awarded against one who has participated in the offense. A principal, therefore, though, of course, liable to make compensation for injuries done by his agent within the scope of his employment, cannot be held liable for exemplary or punitive damages merely by reason of wanton, oppressive, or malicious intent on the part of the agent."

The principle which protects the master against liability for punitive damages will, unless it is otherwise expressly provided by the statute, also protect him against liability for a statutory penalty when the action to recover such penalty from him is founded upon the wrongful act of the servant, done without the knowledge, authority, or consent of the master. This being so, the question is at once suggested as to the nature of the cause of action alleged in the complaint: Is it an action to recover compensation for the actual damage which the plaintiff has sustained by reason of the alleged infringement of his copyright? or is the action one to recover a penalty given by the act of congress for the violation of the copyright law? The answer to these questions will be made clear by a reference to section 4965 of the Revised Statutes, under which the action is brought, and which, so far as is necessary to be here stated, is as follows:

"If any person after the recording of the title to any map * * * as provided by this act, shall, * * * contrary to the provisions of this act, and without the consent of the proprietor of the copyright first obtained in writing, signed in presence of two or more witnesses, * * * copy, print, publish * * * or import, * * * either in whole or in part, * * * or knowing the same to be so printed, published * * * or imported, shall sell or expose to sale any copy of such map, * * * he shall forfeit to the proprietor all the plates on which the same shall be copied, and every sheet thereof, either copied or printed, and shall further forfeit one dollar for every sheet of the same found in his possession, either printing, printed, copied, published, imported, or exposed for sale. * * * One-half of all the foregoing penalties shall go to the proprietor of the copyright and the other half to the use of the United States."

The action authorized by this section in so far as the action relates to the recovery of money is one to enforce a penalty. This seems too clear to admit of argument. That the money judgment which may be recovered therein is not intended solely to compensate a plaintiff for the damage which he may have suffered by reason of the infringement of his copyright could not be made clearer than it has been by the declaration of the statute that one-half of the money recovered shall go to the plaintiff, "and the other half to the use of the United States"; and the supreme court, in the case of Schreiber v. Sharpless, 110 U. S. 76, 3 Sup. Ct. 423, said, in reference to an action brought under this statute:

"The suit was not for the damages the plaintiff had sustained by the infringement, but for penalties and forfeitures recoverable under the act of congress for a violation of the copyright law."

The money judgment for which the statute provides is one for a penalty, and its character in this respect is not at all affected by the fact that its recovery is to be had in a civil action, and not by a criminal prosecution. The language of the supreme court in U. S. v. Chouteau, 102 U. S. 603, is applicable here:

"The term 'penalty' involves the idea of punishment, and its character is not changed by the mode in which it is inflicted, whether by a civil action or a criminal prosecution."

Nor can the action under this statute be regarded as remedial, and not penal, simply because one-half of any judgment recovered is for the use of the plaintiff whose rights have been invaded by the infraction of the law. No provision is made for the recovery of any sum whatever by a plaintiff, except as part of an entire penalty,—to be divided, it is true, but only by the same judgment by which it is inflicted upon the defendant; and it is apparent that the statute does not contemplate that any recovery shall be had unless the case presented shows that the defendant is justly subject to the entire penalty which the statute provides for its violation. It is this fact which gives character to the action as one for the enforcement of a penalty, as distinguished from an action for the recovery of compensatory damages. The action being, then, in its nature, penal, the same principle which exempts the master from the payment of exemplary or punitive damages for the wrongful act of his servant when he did not himself participate in such act, is applicable here; and, if the defendant was not himself guilty of some misconduct which, in the eye of the law, would make him a participant in the act of his servant in violating the plaintiff's copyright, and such act was done without his authority, knowledge, or consent, he is not subject to the penalty provided by the statute and sued for in this action. This was the view taken by the court in Schreiber v. Sharpless, 6 Fed. 175, and the same conclusion was reached in the case of Taylor v. Gilman, 24 Fed. 632. The case of Stockwell v. U. S., 13 Wall. 531, upon which the plaintiff strongly relies, does not announce any principle in conflict with the cases just cited. That, as shown by the report of the case, was an action of debt, brought by the United States against Stockwell and another under the act of March 3, 1823 (3 Stat. 781), "to recover [inter alia] double the value of certain importations of shingles alleged to have been illegally made, and received, concealed, or bought by the defendants, with knowledge that the shingles had been illegally imported into the United States." It was held by the court in that case that the statute under which the action was prosecuted was remedial, notwithstanding it permitted the United States to recover as damages double the value of goods illegally imported and concealed; and in the course of the opinion it was said:

"Double value may not be more than complete indemnity. * * * Regarding, then, an action of debt founded upon the act of 1823 as a claim for compensation or indemnity, it cannot be maintained upon authority or principle that the knowledge of the agent that the goods had been illegally imported is not, presumptively, the knowledge of the principal."

This was all that was in fact decided by the court which has any bearing upon the question of the responsibility of a principal for the wrongful act of his agent, and, if there is any general language to be found in the opinion which seems to go beyond this in discussing the liability of the principal for the act of his agent, it must be remembered that it was used with reference to the fact that the action in the case there under discussion was remedial,—one in which the government was authorized by the statute to recover damages by way of indemnity for goods and merchandise illegally imported,—and not, like this, an action to enforce a penalty. The question of the liability of a principal or master for a statutory penalty on account of the act of his agent or servant, done without his knowledge or authority, was not involved in Stockwell v. U. S., and cannot, therefore, be regarded as having been decided in that case. The demurrer to the answer will be overruled.