UNITED STATES FIDELITY & GUARANTY CO. OF BALTIMORE, MD., v.
UNITED STATES.

(Circuit Court of Appeals, Ninth Circuit. February 4, 1907.)

1. INDIANS—ACTION ON BOND OF INDIAN AGENT—DEFENSE.
Section 8 of Act July 4, 1884, c. 180, 23 Stat. 97, which provides that the presentation by an Indian agent of vouchers, accounts, and claims, containing material misrepresentations of fact in regard to the amounts due and paid shall not constitute an accounting, and making it the duty of the accounting officers of the government to reject such vouchers, does not impose a penalty, nor render an action to recover the indebtedness, resulting from the rejection of such accounts one for the recovery of a penalty, but merely prescribes a statutory rule of accounting which becomes a part of the contract of a surety for an Indian agent, to which his obligation is subject, and it is no defense to such an action on an agent's bond that vouchers so rejected contained correct and true items of expenditure; the agent having the right on their rejection to furnish true vouchers for all items for which he was entitled to credit.

2. SAME—VALIDITY OF BOND—CONDITIONS.
That the bond required from and given by an Indian agent contained provisions not required by any statutory provision does not affect its validity, where its conditions were not in violation of law, and it was entered into voluntarily by both principal and surety, the President and Secretary of the Interior being authorized by statute (Rev. St. § 465 [U. S. Comp. St. 1901, p. 264], and section 2057) to prescribe the character of such a bond, both as to its penalty and the nature and conditions of its obligation.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 27, Indians, § 10.]

3. JUDGMENT—RES JUDICATA—BAR OF SUBSEQUENT ACTION—PRIOR CRIMINAL PROSECUTION.
The conviction and imprisonment of an Indian agent for malfeasance in office is not a bar to a subsequent suit by the United States, on his bond to recover the amount of public money misappropriated or unaccounted for by him.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 30, Judgment, § 1077.]

In Error to the Circuit Court of the United States for the District of Montana.

The United States brought an action in the court below against the plaintiff in error, as surety upon the official bond of Morris L. Bridgeman, Indian agent of the Ft. Belknap Indian Agency. The condition of the bond was that "if the said principal shall at all times during his holding and remaining in office, carefully discharge the duties thereof and faithfully disburse all public moneys, and honestly account, without fraud or delay, for the same and for all public funds, including the funds designated in regulations of the Indian department, as miscellaneous receipts and moneys belonging to Indians under his charge, which shall or may come into his hands, and all other funds received by him by reason of his position as United States Indian agent, and for all public property placed in his charge; and if the said principal shall not knowingly present, or cause to be presented any voucher, account or claim of the character mentioned in section 8 of the act of Congress of July 4, 1884 (23 Stat. 97, c. 180), or in any manner become liable thereunder, then the above obligation to be void and of no effect; otherwise to remain in full force and virtue." The complaint alleged that the official accounts of said Morris L. Bridgeman, as agent for the Ft. Belknap Indian Agency have been stated, settled, and adjusted by the duly authorized and lawful officers of the government of the United States, as required by law, and that upon such statement, settlement, and adjustment, here was found to be due and owing to the United

States from Morris L. Bridgeman, as such agent on account of public moneys and public property received by him as such agent, and which he failed to disburse and account for, the sum of $11,357.07. The said sum of $11,357.07 is in the complaint made up of two items—one of $10,489.50, public moneys; the other $867.57, the value of public property. The demand for judgment was for $11,357.07 and interest thereon at 6 per cent. per annum from April 30, 1902. The answer set up affirmative defenses, the first of which is as follows: That the said Bridgeman as such agent presented to the Commissioner of Indian Affairs for approval and payment, vouchers, and accounts, and claims for all money disbursed by him; that he faithfully disbursed for the use and benefit of the Indians of the agency all the moneys included in such vouchers, accounts, and claims for which he claimed credit, excepting a sum not exceeding $2,000; that several of the vouchers so presented contained material misrepresentations of fact in regard to the amount due or paid, name or character of the article furnished or received, or services rendered, or the date of purchase, delivery, or performance of service, or in some other particular, and that by reason of such false representation, the said Bridgeman was refused and denied credit for any part of either of said vouchers containing such false representations, and that this was done pursuant to section 8 of the act of Congress of July 4, 1884, c. 180, 23 Stat. 97; that said Bridgeman honestly and without fraud or delay accounted for all public moneys received by him as indicated except a sum not exceeding $2,000; that the said vouchers, accounts and claims containing such false representations amounted in the aggregate to $10,489.50 for the whole of which the said Bridgeman was denied credit. The second defense is in substance the allegation that for his malfeasance in office the said Bridgeman had been indicted and tried in the United States District Court for the District of Montana, and on such trial had been convicted and sentenced to imprisonment for a period of three years, and that by reason of those facts the government should not be heard to assert any claim against the plaintiff in error for penalties incurred by the said Bridgeman in presenting such vouchers, accounts and claims, containing false representations; that said judgment is a bar to the recovery of any such penalties from the plaintiff in error. The third defense is that, before the execution and delivery of the bond, the Department of the Interior caused the bond to be prepared and transmitted to Bridgeman and required him to execute the same with sufficient sureties before permitting him to enter upon the duties of the office of Indian agent; that the conditions of the bond are wholly different from and in excess of the conditions required by law, and vary and enlarge the duties and responsibilities of said Bridgeman and the surety, and impose upon the latter obligations and liabilities different from and in excess of those to which it would be subjected if the bond had contained the conditions provided by law and had not contained such illegal conditions; that said bond was extorted from the said Bridgeman under color and pretense of law and under color of the office of the Secretary of the Interior, and is therefore void and of no effect. The defendant in error moved for judgment on the pleadings, and the motion was allowed. Judgment was rendered in favor of the defendant in error, and against the plaintiff in error, for the sum of $14,082.75, with interest from the date thereof at 6 per cent. per annum, and for costs.

M. S. Gunn, for plaintiff in error.

Carl Rasch, U. S. Atty.

Before GILBERT, ROSS, and MORROW, Circuit Judges.

GILBERT, Circuit Judge, after stating the case as above, delivered the opinion of the court.

The undertaking of the surety was that the principal should at all times "honestly account without fraud or delay" for all public moneys and property coming into his hands as such agent. Under section 8 of the act of July 4, 1884 (23 Stat. 97, c. 180), the presentation of vouchers, accounts, and claims, containing material misrepresentations

of fact in regard to the amounts due and paid, was not an accounting. The statute vested the accounting officers with no discretion as to such vouchers. It made it their plain duty to reject them. The law as to accounting, not having been complied with, the matter was left as if no account whatever had been rendered. The plaintiff in error contends that the rejection of an account upon the grounds set forth in the act is the imposition of a penalty, and that the decision of the court below requires the plaintiff in error to pay the sum of $10,489.50 upon a rejected account; whereas the actual loss to the United States did not exceed $2,000, and cites the rule that the measure of damages to which the surety on an official bond is bound, in the absence of any statutory rule is just compensation for the injury actually sustained.

The rejection of an account in compliance with the expressed language of the statute is not the imposition of a penalty. It is but the enforcement of a statutory rule of accounting. Nor is the present action an action to recover a penalty. It is an action to enforce a liability arising out of contract. Section 3624 of the Revised Statutes [U. S. Comp. St. 1901, p. 2418] provides as follows:

"Whenever any person accountable for public money neglects or refuses to pay into the Treasury the sum or balance reported to be due to the United States, upon the adjustment of his accounts the first Comptroller of the Treasury shall institute suit for recovery of the same."

Every one who becomes surety for an Indian agent, enters into his contract of suretyship with a view to the statutes which may affect his liability, the provisions of which he is presumed to know, and which become as much a part of his contract as if they were embodied in the bond. Smythe v. United States, 188 U. S. 177, 23 Sup. Ct. 279, 47 L. Ed. 425; Alexander v. United States, 57 Fed. 832; 6 C. C. A. 602; Pond v. United States, 111 Fed. 995, 49 C. C. A. 582. The plaintiff in error finds argument in support of his contention in the language of the act itself, wherein, after providing for the rejection of false and fraudulent claims and vouchers, the words are added: "That the foregoing shall be in addition to the penalties now prescribed by law," and reasons that from the use of these words Congress considered the section as penal in its character. The words so used do not justify that inference. The statute does not say that the foregoing shall be in addition to other penalties. It says, in effect, that the indebtedness resulting from the rejection of such accounts shall not take the place of or affect the penalties which have been prescribed by law, in punishment of malfeasance in office. It treats the obligation to pay as a debt due the United States. The act in express terms provides that the amount due shall be recovered "in the same manner as other debts due the United States are collected." The answer admits that each of the vouchers, accounts, and claims, amounting in the aggregate to $10,489.50, was subject to objection, for the reason that it contained false items, but alleges that the false items amounted in all to no more than $2,000. If that was the extent of the falsification of the vouchers by the Indian agent, he had his plain remedy by presenting true vouchers as to all matters in the account for which he was justly entitled to credit. As early

as March 9, 1903, he was notified of the rejection of his account, and the reason therefor, and, between that date and the commencement of the suit, he had five months within which to file corrected vouchers. This he failed to do, and neither he nor his surety can complain of the rejection of the whole account. It is a natural conclusion, but one that is not essential to support the judgment herein, that the whole of the account was fraudulent.

It is contended that the affirmative defense shows that the bond was extorted from the Indian agent under color and pretense of law, and under color of the office of the Secretary of the Interior, and is therefore void and of no effect. The defense, as pleaded, falls short of showing that any influence or pressure was brought to bear upon the agent or his surety to induce the execution of the bond, or that either he or the surety objected to the form of the bond as prepared, or executed the same under protest. In United States v. Hodson, 10 Wall. 395, 19 L. Ed. 937, it was held that if a bond is open to objection, the objection should be made when the bond is presented for execution; that if executed under constraint, the constraint will render it void; but that, where it is voluntarily entered into, and the principal enjoys the benefit which it is intended to secure and a breach occurs, it is too late to raise the question of its validity. But the plaintiff in error contends that the only condition in an Indian agent's bond, authorized by law is that provided by section 4 of the act of June 30, 1834, c. 162, 4 Stat. 735, which requires the agent to give a bond "with two or more sureties in the penal sum of $2,000 for the faithful execution of the same." That statute, however, is not the law under which the bond in the present case was given. It was executed under the authority of section 2057 of the Revised Statutes which requires Indian agents to "give bonds in such penalties and with such security as the President or the Secretary of the Interior may require." This was originally the act of February 27, 1851. By section 5596 of the Revised Statutes [U. S. Comp. St. 1901, p. 3750], the portion of the act of 1834, relating to bonds, was repealed. Section 465 [U. S. Comp. St. 1901, p. 264] provides as follows:

"The President may prescribe such regulations as he may think fit for carrying into effect the various provisions of any act, relating to Indian affairs, and for the settlement of the accounts of Indian affairs."

By these statutes the President and the Secretary of the Interior are given the authority to determine the character of the bond, both as to its penalty and the nature and conditions of its obligation. The plaintiff in error relies on United States v. Tingey, 5 Pet. 115, 8 L. Ed. 66, in which it was held that, where a bond imposing obligations in excess of the requirements of the statute is demanded of an officer, as a condition precedent to the enjoyment of his office, the bond is said to be extorted colore officii, and is void in toto. The bond in that case was held void as being extorted under color of office, because it was in plain violation of the statute, and was demanded of the officer on peril of losing his office. The case is therefore not in point. In

Moses v. United States, 166 U. S. 571–586, 17 Sup. Ct. 682, 688, 41 L. Ed. 1119, it was said:

"The consideration or the condition of the bond must not be in violation of law. It must not run counter to any statute. It must not be either malum prohibitum or malum in se. Otherwise and for all purposes of security a bond may be valid, though no statute directs its delivery. * * * Having the right to take a bond, the government in a case like this has the right to demand it from the officer, and to say to him if he does not give it he will not be continued as a 'property and disbursing officer of the Signal Service.' Such a demand when complied with does not amount to the illegal exaction or extortion of the bond. The case of a bond so procured differs radically from a case like that of Tingey (United States v. Tingey, 5 Pet. 115, 8 L. Ed. 72), inasmuch as the bond in the latter case was extorted from a reluctant officer, with the condition therein contained different from that which the statute called for."

And the court said that the bond given in that case "did not cease to be a voluntary bond, merely because Lieut. Howgate did not gratuitously, and without request, proffer it, and ask that it might be received, or because he was reluctant to give it, and only gave it upon the demand of the Secretary."

It is contended further that the judgment in the criminal case against the Indian agent is a bar to recovery in the present action, and the plaintiff in error cites United States v. Shapleigh, 54 Fed. 126, 4 C. C. A. 237, United States v. Choteau, 102 U. S. 603, 26 L. Ed. 246, Coffey v. United States, 116 U. S. 436, 6 Sup. Ct. 437, 29 L. Ed. 684, McDonald v. Hearst (C. C.) 95 Fed. 656, and United States v. Jaedicke (D. C.) 73 Fed. 100. We find no support for the contention of the plaintiff in error in any of these decisions. In the Choteau Case, a distiller's bond had been given under a statute, which provided that, for his failure to comply with the statutory requirements, he should be liable to a penalty of double the tax imposed on distilled spirits removed or concealed, and fined not less than $200, nor more than $5,000, and imprisoned not less than three months nor more than three years. An action was brought on the bond against the sureties, and, in defense thereof, it was pleaded that prior thereto an indictment had been returned against the distiller, and that with the advice of the Secretary of the Treasury, and upon the recommendation of the Attorney General, the Commissioner of Internal Revenue had accepted from the distiller $1,000 in full satisfaction, compromise, and settlement of the indictment and prosecution, which were thereupon dismissed and abandoned. It was held that the sum so paid in compromise and settlement of the indictment, was a settlement and res judicata of the whole matter. Coffey v. United States was a similar case, except that on the criminal charge there was an acquittal of the defendant on all the acts, attempts, and intents averred in the subsequent action to recover. In both of these cases recovery was sought, not as for a debt due the United States, but as part of the penalty denounced against the offender for violation of duty, and, under statutes defining the offense and fixing the penalty. Both cases are therefore plainly distinguishable from the case at bar, and the same is true of other decisions cited by the plaintiff in error. The punishment of the Indian agent by

imprisonment has nothing to do with his civil liability on his bond. It has not the effect to reimburse the United States, and cannot be said to have been accepted by the Government as satisfaction or compromise of its account against that officer. In United States v. Jaedicke, it was held that the acquittal of a defendant, under an indictment for making a false and fraudulent return as postmaster, for the purpose of increasing his compensation, is not a bar to an action by the United States upon the bond of such postmaster to recover the amount found due the government upon the adjustment of his accounts. Said the court:

"The amount sued for in this case is not a forfeiture or penalty, but simply a sum improperly withheld by the defendant in excess of his legal compensation."

We find no error for which the judgment should be reversed. It is accordingly affirmed.