ILLINOIS SURETY CO. v. UNITED STATES.

(Circuit Court of Appeals, Ninth Circuit.   July 1, 1918.)

No. 3072.

1. Customs Duties ⊜⟶49½. New, vol. 6 Key-No. Series—Free List—Sun-
DRIES—Exhibition of Theatrical Scenery.
  Act Aug. 5, 1909, § 1, Free List, par. 656, providing that theatrical
scenery. etc., brought by proprietors or managers from abroad for tem-
porary exhibition, and not for sale, shall be admitted free of duty, bond
being given for payment of duties imposed upon all articles not exported,
does not require, as condition precedent to validity of bond, that im-
porters of theatrical effects must have actual possession of or accompany
same at time of arrival, or be a person immigrating to the United States.

2. Customs Duties ⊜⟶49½, New, vol. 6 Key-No. Series—Surety on Redeliv-
ery Bond—Importation of Theatrical Scenery.
  In action by United States against surety on redelivery bond, con-
ditioned that principal, within six months, would redeliver to collector of
port theatrical scenery imported, surety is in no position to say goods
ought not to have been admitted temporarily free of duty, because un-
accompanied by importer; it having become surety with knowledge of
fact goods were so admitted.

3. Customs Duties ⊜⟶49½, New, vol. 6 Key-No. Series—Free List—Theat-
rical Scenery—Redelivery Bond.
  A redelivery bond, given by the importer of theatrical scenery for
temporary use only in this country, and conditioned that he would re-
deliver the scenery within six months to the collector of a port, and re-
export it, was not void, as restricting exportation from any port other
than that mentioned only as place of redelivery to collector to prove
identity.

4. Customs Duties ⊜⟶49½. New, vol. 6 Key-No. Series—Statutes—Con-
struction—Redelivery Bonds.
  Statutes requiring the execution of redelivery bonds for imported goods
are remedial in their character, and should be construed liberally, to
carry out the purpose of their enactment.

5. Customs Duties ⊜⟶49½, New, vol. 6 Key-No. Series—Free List—Theat-
rical Scenery—Redelivery Bond—Statute.
  Redelivery bond, executed by the importer of theatrical scenery, etc.,
was not void because conditioned that importer within six months would
redeliver to collector of port and export it, though Act Aug. 5, 1909, c. 6,
§ 1, Free List, par. 656, requires that bond be given for payment of such
duties as may be imposed by law in case goods are not exported within
six months.

6. Bonds ⊜⟶35—Statutory Bond as Common-Law Bond.
  Redelivery bond, given by importer of theatrical scenery, etc., con-
ditioned that he would within six months redeliver to collector of port,
and enter effects for exportation within six months, as prescribed by Act
Aug. 5, 1909, c. 6, § 1, Free List, par. 656, was valid as common-law ob-
ligation, though not conditioned for payment of such duties as might be
imposed by law; the statutory requirement.

In Error to the District Court of the United States for the South-
ern Division of the Northern District of California; Frank H.
Rudkin, Judge.

Action at law by the United States against the Illinois Surety
Company, a corporation.   To review judgment for the United States
defendant brings error.   Affirmed.

⊜⟶For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

F. De Journel and T. C. West, both of San Francisco, Cal., and Roy V. Nye, of Monrovia, Cal., for plaintiff in error.

John W. Preston, U. S. Atty., and Ed. F. Jared, Asst. U. S. Atty., both of San Francisco, Cal.

Before GILBERT, MORROW, and HUNT, Circuit Judges.

GILBERT, Circuit Judge. The plaintiff in error was the surety on a redelivery bond for one Grazi, the condition of which was that Grazi would within six months redeliver to the collector of the port of San Francisco certain theatrical scenery, properties, and apparel which had been imported from France to the United States, and enter the said effects for exportation from the United States within said six months in the manner prescribed by law and the regulations of the Treasury Department. Grazi was the proprietor of a theatrical exhibition at San Francisco, and he imported the effects from France to the port of New York, whence they were brought under an immediate transportation order to the port of San Francisco, where the duties were to be paid or the redelivery bond was to be given. After entry the goods were appraised, and the valuation fixed at $15,558, upon which the duty was $9,726. Upon the execution of the bond the goods were surrendered to Grazi, and a portion thereof was thereafter delivered to the collector and exported. The remainder of the goods, subject to a duty of $6,108.66, were not exported or delivered for exportation. The penalty of the bond was $6,000. For that sum, and for interest and costs, the court below rendered judgment against the plaintiff in error.

[1, 2] It is contended that, inasmuch as the theatrical effects covered by the bond did not come into the United States on the same vessel with Grazi, they were not at the time of arrival in his possession, and that therefore the bond is absolutely void. The statute applicable to the case is Act Aug. 5, 1909, c. 6, § 1, Free List, par. 656, 36 Stat. 78. While that statute places upon the free list professional books, implements, instruments, and tools of trade, etc., in the actual possession at the time of arrival of persons emigrating to the United States, it provides that the exemption shall not be construed to include theatrical scenery, properties, and apparel; "but such articles brought by proprietors or managers of theatrical exhibitions arriving from abroad for temporary use by them in such exhibitions and not for any other purpose, and not for sale, and which have been used by them abroad, shall be admitted free of duty under such regulations as the Secretary of the Treasury may prescribe, but bonds shall be given for the payment to the United States of such duties as may be imposed by law upon any and all such articles as shall not be exported within six months after such importation, provided that the Secretary of the Treasury may, in his discretion extend such period for a further term of six months, in case application shall be made therefor." This statute cannot be construed to mean that the importer of theatrical effects must have the actual possession thereof or accompany the same at the time

of their arrival, or that he shall be a person emigrating to the United States. It is sufficient if they are brought by him from abroad for temporary use, and not for sale, and that they have been used by him while abroad. Again, the plaintiff in error is in no position to say that the goods ought not to have been admitted temporarily free of duty, because unaccompanied by the importer. The fact was that they were so admitted free of duty, the plaintiff in error knew it, and with knowledge of that fact became surety on the bond, and it cannot now dispute the terms of the bond.

[3] We find no merit in the contention that the bond is void because it restricts the exportation of the imported effects from any port other than San Francisco. It is not so nominated in the bond. San Francisco is mentioned only as the place for the redelivery of the goods to the collector for the purpose of furnishing proof of the identity thereof. The bond goes on to provide that the importer shall enter said effects for exportation from the United States within six months, in the manner prescribed by law and the regulations of the Treasury Department.

[4, 5] But it is said that the bond is void, because it is not conditioned as required by law; that it is conditioned for redelivery of the goods, and not for the payment of the duties. The statute, it is true, requires that the bond shall be given for the payment of such duties as may be imposed by law in case the goods are not deported within six months, and that in the bond under consideration there is no such provision, but the condition is for redelivery to the collector for exportation within six months. It is clear, however, that, if the bond had been drawn strictly under the terms of the statute, the condition thereof would, in effect, have been complied with by redelivery to the collector, and it is also clear that liability under the bond which was given would have been avoided, if the duties had been paid. The bond is therefore not substantially different from the bond required by the statute. It is a bond to hold the United States harmless against the loss of duties on goods imported into the United States, and its obligation is complied with either by redelivery or by payment of the duties. Statutes requiring the execution of such bonds are remedial in their character, and should be construed liberally, to carry out the purpose of their enactment. In United States v. Hodson, 10 Wall. 395, 406 (19 L. Ed. 937), the court said of a bond which had not been executed in the manner specified in the statute:

"A bond in this form is not prohibited by the statute, nor is it contrary to public policy. It was founded upon a sufficient consideration, and was intended to subserve a lawful purpose."

In Moses v. United States, 166 U. S. 571, 17 Sup. Ct. 682, 41 L. Ed. 1119, in a case where the bond was voluntarily given, the court said:

"The consideration or the condition of the bond must not be in violation of law; it must not run counter to any statute; it must not be either malum prohibitum or malum in se. Otherwise, and for all purposes of security, a bond may be valid though no statute directs its delivery."

That language was approved in United States v. Dieckerhoff, 202 U. S. 302, 26 Sup. Ct. 604, 50 L. Ed. 1041, and was cited by this court in United States Fidelity & G. Co. v. United States, 150 Fed. 550, 80 C. C. A. 446.

[6] We think, also, that the bond is valid as a common-law obligation. In United States v. Tingey, 5 Pet. 115, 8 L. Ed. 66, the court held that a voluntary bond, taken by authority of the proper officers of the Treasury Department to whom the disbursement of public moneys is intrusted, to secure the fidelity in official duties of a receiver or an agent for the disbursement of public moneys, is a binding contract between him and his sureties and the United States, "although such bond may not be prescribed or required by any positive law." The court said:

"The right to take such a bond is, in our view, an incident to the duties belonging to such a department; and the United States having a political capacity to take it, we see no objection to its validity in a moral or legal view."

The same was held in United States v. Bradley, 10 Pet. 343, 9 L. Ed. 448. In Jessup v. United States, 106 U. S. 147, 152, 1 Sup. Ct. 74, 78 (27 L. Ed. 85), the court, after citing prior decisions, said:

"These authorities show that the United States can, without the authority of any statute, make a valid contract, and that when the form of a contract is prescribed by the statute, a departure from its directions will not render the contract invalid. The bond is good at common law."

Among the cases applying that doctrine are Diamond Match Co. v. United States (C. C.) 31 Fed. 271; Rogers v. United States (C. C.) 32 Fed. 890; Carnegie, Phipps. & Co. v. Hulbert, 70 Fed. 209, 16 C. C. A. 498; Stephenson v. Monmouth Min. & Mfg. Co., 84 Fed. 114, 28 C. C. A. 292; Grady v. United States, 98 Fed. 240, 39 C. C. A. 42.

The judgment is affirmed.